613 A.2d 634

**In re Petition of the TAX CLAIM BUREAU OF WESTMORE-LAND COUNTY, Pennsylvania, to Sell Free and Clear the Property of Alvin Painter Being Map No. 49–15–00–0–072.**

**Appeal of MONEY STORE FINANCIAL CO., INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 14, 1992.

Decided Aug. 4, 1992.

Charles E. Boyle, for appellant.

Aaron M. Kress, Sol., for appellee, Tax Claim Bureau.

Harvey A. Zalevsky, for intervenor appellee, Eastern Inv. Group.

Before McGINLEY, and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Before us is an appeal by Money Store Financial Company, Inc. (the Money Store) from the August 19, 1991 order of the Court of Common Pleas of Westmoreland County which dismissed the Money Store's petition to set aside the judicial sale of property upon which the Money Store held a mortgage. The issue before us is whether the Money Store received notice of the judicial sale in accordance with the provisions of the Real Estate Tax Sale Law (the Law), Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101–5860.803.

The Money Store held a mortgage executed by Alvin Painter against his property. As the result of Mr. Painter's failure to pay real estate taxes for the years 1985 through 1989, the Westmoreland County Tax Claim Bureau (Bureau), on September 10, 1990, exposed the property to sale at the annual upset sale pursuant to Section 601 of the Law, 72 P.S. § 5860.601. The property was not sold at the upset sale. Thereafter, the Bureau petitioned the trial court to sell the property at a judicial sale.

Section 610 of the Law, 72 P.S. § 5860.610, provides for a tax bureau to petition the court of common pleas for a judicial sale in cases where the upset price was not bid at an upset sale, as occurred in the present case. Section 610 states what shall be set forth on the petition to the court. It further provides:

Upon the presentation of such petition, accompanied with searches, showing the state of the record and the ownership of the property and all ... mortgages ..., the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective ... mortgages.... The rule shall be made returnable in not more than thirty (30) days from the date the petition was presented or as otherwise determined by the court.

Upon presentation of the petition by the Bureau to the trial court, the trial court, on October 9, 1990, entered the following Rule to Show Cause:

## RULE

AND NOW, to-wit, this 9th day of October, having considered the foregoing Petition and upon motion of Aaron M. Kress, Assistant County Solicitor, a Rule is granted upon the Owners, and lienholders, if any, to appear and to show cause, if any, why a Decree should not be made that the property described in the foregoing Petition be sold free and clear of all tax and municipal claims, liens, mortgages, charges and estates, except separately taxed ground rents.

Rule returnable thirty (30) days from today's date.

In the Bureau's petition and in compliance with the Law, the Money Store was listed as having a mortgage on the property. Pursuant to the Rule entered by the trial court on October 9, 1990, the prothonotary caused the Rule to issue. The Rule issued by the prothonotary pursuant to the aforesaid order of the trial court, also dated October 9, 1990, stated, "Now, Therefore, We Command You, the said Owners and Lienholders, that you be and appear before our Judge, at Greensburg, at a Court of Common Pleas, there to be held in and for said County thirty (30) days from today's date...." (R.R. 16a.)

Section 611 of the Law, 72 P.S. § 5860.611, sets forth the manner of service of the Rule. The foregoing Rule was served on the Money Store on October 26, 1990 and the

Money Store admits having been properly served.[1] Upon being served with the Rule, the Money Store telephoned the Bureau and advised it that Mr. Painter was in bankruptcy proceedings and that the property in question was protected by an automatic stay against proceedings by any creditor. Except for that telephone call, the Money Store did nothing further.

The record before us reveals that, contrary to the command of the Rule, no hearing was held on the return day of thirty days after October 9, 1990, that is, November 8, 1990.[2] Without any predicate[3] in the record, the trial court signed an order on January 8, 1991 which stated as follows:

> AND NOW, to-wit, this 8th day of January, 1991, it appearing that more than thirty (30) days have elapsed since the service of the Rule(s) and Petition(s), it is hereby ORDERED that a hearing on the Rule(s) and Petition(s) be held on the 31st day of January, 1991, at 1:30 P.M., o'clock.
>
> NOTICE to be given to all parties who have answered the Petition (s) and Rule(s) or entered an appearance on the record. (R.R. 17a.)

Significantly, the trial court directed that notice of the hearing was to be given only "to all parties who have answered the ... Rule(s) or entered an appearance...."[4] In Paragraph 12 of the Bureau's answer to the Money Store's Petition to Set Aside Tax Sale, it stated, "[Bureau] admits that a hearing was held without notice to [the Money Store]," that is, that the Money Store did not receive the January 8, 1991 order which set the date of hearing.

Section 612(a) of the Law, 72 P.S. § 5860.612(a), provides:

1. The record reveals that two other lienholders were also served with the Rule, Atlantic Financial Federal, and Penn Trafford School District.
2. There is nothing in the record as to why no hearing took place on the return day.
3. The record is devoid of any application by way of a motion, petition or notice of presentation thereof, or any transcript of what transpired in the trial court at the time the January 8, 1991 order was signed.
4. The other lienholders, having filed responses to the Rule, were notified of the January 8, 1991 order.

(a) If upon hearing, the court is satisfied that service of the rule has been made upon the parties named in the rule, in the manner provided by this act, and that the facts stated in the petition are true, it shall order and decree that said property be sold at a subsequent day to be fixed by the court, freed and cleared of all tax and municipal claims, mortgages, liens, charges and estates, except separately taxed ground rents, to the highest bidder, and that the purchaser at such sale shall take and thereafter have an absolute title to the property sold free and clear of all tax and municipal claims, mortgages, liens, charges and estates of whatsoever kind, except ground rents, separately taxed. . . .

Hearing on the Rule was held on January 31, 1991. On that same date, the trial court entered an order by which it set the date of the judicial sale for February 15, 1991, and which provided that the purchaser at the sale shall take the property free and clear of all, *inter alia,* mortgages. The order further provided that readvertisement of the sale need not be published since the petition was presented within three months of the date of the upset sale on September 10, 1990, in accordance with Section 612(b) of the Law,[5] 72 P.S. § 5860.612(b). Again, in Paragraph 12 of the Bureau's answer to the Money Store's Petition, it stated, "[Bureau] admits ... that an Order of Court authorizing the sale was made [the January 31, 1991 order] and that a copy of the Order was not sent to the [Money Store]."

On February 15, 1991, the judicial sale was conducted and the property was sold to Eastern Investment Group free and clear of all tax and municipal claims, mortgages, liens and charges and estates, except for separately taxed ground rents.

Thereafter, on April 30, 1991, the Money Store filed the within "Petition to Set Aside Tax Sale," and a Rule to Show Cause was issued that day. In the petition, the Money Store alleged errors in the judicial sale in that, (1) Mr. Painter filed

5. That section provides in relevant part:
 (b) When aforesaid petition for sale is presented within three (3) months after the date of the scheduled upset sale, the court, in its order, shall direct that no further advertisement is required. . . .

for Chapter 7 bankruptcy in the United States District Court for the Western District of Pennsylvania at No. 89–00288 in February, 1989 and that, until the close of the bankruptcy proceedings on October 18, 1990, a stay was in effect regarding actions against the property by any creditor, including the Bureau; (2) the Money Store had not been given notice of the September 10, 1990 upset sale; and (3) the Money Store had not been given notice of the January 8, 1991 order fixing a hearing on the Rule for January 31, 1991 and therefore it was deprived of its opportunity to object to the judicial sale and to receive notice of the date of the sale.

A hearing was held on the petition before the trial court on June 19, 1991. By opinion and order dated August 19, 1991, the trial court dismissed the petition to set aside the judicial sale. As to the issue of notice of the hearing on the Rule and date of the sale, the trial court stated:

> The personal service of the rule informed the mortgagee [the Money Store] of the pending sale and when and where the mortgagee could assert any objection to the sale. No further notice was required, and since the mortgagee failed to respond to the rule, it has only itself to blame. I reject the mortgagee's contention that a telephone call to the office of the Tax Claim Bureau inquiring about the date of the sale, can be equated with an answer to the rule to show cause which directed the mortgagee to respond to the court. In addition, there is no impediment because the Tax Claim Bureau did not inform the mortgagee of the date of the sale since there is no constitutionally-protected right to redeem the real estate or to bid on the real estate. *First Pennsylvania Bank v. Lancaster County Tax Claim Bureau*, supra, at 140, 521 A.2d at 116. The mortgagee was apprised of how it could object to the tax sale by the rule, but instead chose to follow its own methods which proved inadequate.[6]

(Opinion, p. 4.) (Footnote added.)

6. As to the remaining issues, the trial court determined that the Law does not require individual notice to lienholders of an upset sale (publication is required) because liens are not divested at an upset sale (72 P.S. § 5860.609), and that Mr. Painter's property was exempted

An appeal therefrom followed to this Court and the issues raised are, (1) lack of notice of the September 10, 1990 upset sale; (2) lack of notice of the January 8, 1991 order scheduling a hearing on the Rule for January 31, 1991; (3) lack of notice of the January 31, 1991 order fixing the date of the "free and clear" judicial sale for February 15, 1991; and, (4) that the judicial sale was precluded by the automatic stay in effect as a result of Mr. Painter's Chapter 7 bankruptcy proceedings. By reason of our disposition of the issues of absence of notice of the January 8, 1991 and January 31, 1991 orders, we need not address the matters of lack of notice of the upset sale or of the automatic stay as a result of Mr. Painter's bankruptcy.

In *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), the United States Supreme Court stated that "[s]ince a mortgagee clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale." 462 U.S. at 798, 103 S.Ct. at 2711. The Money Store contends that it did not receive such notice in the present case. The trial court determined that the Rule was sufficient notice "of the pending sale and when and where the [Money Store] could assert any objection to the sale." (Opinion, p. 4.) We will examine the nature and purpose of a Rule to Show Cause.

A Rule to Show Cause is one that is made *ex parte,* directing an adverse party to show cause why an action should not be taken; the Rule is not, except by statute, a proper substitute for original process, but is auxiliary. *Rusbarsky by Rusbarsky v. Rock,* 324 Pa.Super. 28, 471 A.2d 107 (1984). At common law and in modern practice, there are two classes of Rules; peremptory, i.e., absolute in the first instance and entered on the order of counsel, and rules to show cause, i.e., rules *nisi* which are required to be allowed by the court or a judge and which are afterward discharged or made absolute by the court on argument. JAMES T. MITCHELL, MITCHELL ON MOTIONS AND RULES (Philadelphia, Rees Welsh & Co. ed., 1879). WILLIS R. BIERLY, PROCEDURE BY

from the bankruptcy proceedings, i.e., it was not part of the debtor's estate which was liquidated.

PETITION AND RULE (William P. Atkinson ed., 1904). A rule to show cause is placed on the appropriate list, and upon the return day it is called by the court for a hearing; the party who has obtained the rule has the burden of proof upon him. *Id.*

■ In modern practice, the Rules of Civil Procedure govern pleadings in civil actions and define what is a civil action. Nowhere in the Rules of Civil Procedure is a Rule to Show Cause made subject to the Rules of Civil Procedure; thus, failure to answer a Rule to Show Cause or to enter an appearance upon it is of no moment.[7] The only requirement to a Rule to Show Cause is to appear on the return day. If the hearing is held and a party fails to appear, it is bound by the decision rendered; if the hearing is not held, however, the fact that a party may or may not have been there does not validate what action is later determined upon the Rule if notice of the continued hearing is not given to the party.

■ The Rule issued pursuant to Section 610 of the Law upon a petition for judicial sale is not the peremptory type but instead must be issued by the trial court. The divestiture of the lien is not effected by issuance of the Rule or the return day thereof. It is accomplished by hearing on the return day wherein the trial court verifies the averments of the petition and, if satisfied that they are true, fixes the date of the free and clear sale. Thus, it is important that the lienholders get notice of that hearing.

■ The record in the present case clearly establishes that no hearing was held on the return day of the Rule issued October 9, 1990, that is, November 8, 1990. There is no dispute that the hearing on the Rule was conducted pursuant to the January 8, 1991 order continuing the hearing to January 31, 1991, and that the Money Store was not so notified. After the hearing, the date of sale was fixed for February 15, 1991; again, there is no dispute and the record establishes that the Money Store was not so notified. Thus, the issue to

7. There are allusions to Rules to Show Cause in Pa.R.C.P. 209, 2352, 2353 and 3110; however, they are specific and do not deal with pleadings.

be determined here is, since a hearing on the Rule to Show Cause is required, did the trial court err when it continued the hearing without notice to all parties upon whom the Rule was issued?

In *In re Tax Sale of 1980 Under Real Estate Tax Sale Law of 1947*, 78 Pa.Commonwealth Ct. 49, 466 A.2d 1112 (1983), we determined that the Dauphin County Tax Claim Bureau failed to comply with the notice provisions for a tax sale, set forth at Section 602 of the Law, 72 P.S. § 5860.602, in a case in which the facts are set forth as follows:

The facts in this case are undisputed. The Dorics, as owners of property located at 21 South Third Street in Harrisburg, failed to pay property taxes for the year 1978. This led the Bureau to issue the appropriate notices of delinquency and a tax sale of the subject property was subsequently scheduled for September 8, 1980. Notice of this tax sale was issued pursuant to the requirements of Section 602 of the Real Estate Tax Sale Law.... Upon going to the Bureau, however, Mr. Doric was informed that the sale of his and other Harrisburg properties would not be September 8, but had instead been adjourned to a later date as yet undetermined. Mr. Doric accordingly did not attend the tax sale of September 8, at which it was announced that Harrisburg properties would be sold on November 7, 1980. On October 20, 1980, a deputy sheriff went to the subject premises and personally served Mr. Doric with a notice of the sale. This notice contained no reference to November 7 as being the date of sale, despite it having been announced by the Bureau at the sale on September 8, 1980 some six weeks previous. Instead, the notice was identical to that received prior to the September 8 sale *and referred only to September 8, 1980* "or any date to which the sale may be adjourned, re-adjourned or continued ..." When questioned by Mr. Doric as to the actual date of sale, the deputy sheriff stated that he did not know when it would be. Mr. Doric made no other attempt whatsoever to either contact the Bureau or make arrangements to pay the arrearage on his taxes. At the November 7, 1980 sale, the Doric's property was purchased for the upset price of $4,894.87.

The Doric's [sic] filed exceptions to the sale with the court of common pleas which, after a hearing, set aside the sale on the grounds that the Dorics did not receive proper notice of the sale under the Law.

78 Pa.Commonwealth Ct. at 50–51, 466 A.2d at 1112–1113. (Emphasis in original; footnote omitted.)

Although the present case involves a judicial sale and notice provisions which are set forth at different sections of the Law, the facts of *In Re Tax Sale of 1980* are analogous to those before us because the trial court's action in the present case had the same effect; that is, its failure to serve the Money Store with the January 8, 1991 order setting the date of hearing deprived the Money Store of notice of the date of the sale of property upon which it held a mortgage.

For all of the foregoing reasons, we determine that the Money Store did not receive notice of the judicial sale in accordance with the Law and *Mennonite Board of Missions, supra.* Failure of the trial court to give adequate notice results in an undischarged lien, and the purchasers at the judicial sale took the property subject thereto. *See Muhlenberg Township Authority v. Fisher,* 94 Pa.Commonwealth Ct. 351, 503 A.2d 1022 (1986).

The order of the trial court is affirmed as to its refusal to set aside the judicial sale and is reversed as to its decision that the mortgage held by the Money Store was divested by the judicial sale held February 15, 1991.

## ORDER

AND NOW, this 4th day of August, 1992, we affirm the order of the Court of Common Pleas of Westmoreland County, dated August 19, 1991, insofar as it dismissed the petition to set aside the judicial sale and we remand to the trial court with directions to enter an order that the subject property remains and is subject to the mortgage of the Money Store Financial Company, Inc., which mortgage is recorded in the Recorder of Deeds' Office for Westmoreland County in Mortgage Book Volume 1804, Page 553.

Jurisdiction relinquished.

McGINLEY, Judge, concurring and dissenting.

I concur in the majority opinion insofar as it affirms the trial court's decision not to set aside the judicial sale, however, I respectfully dissent to the portion of the majority opinion which reverses the trial court's decision that the Money Store's mortgage interest was divested by the sale. I believe that personal service of the Rule to Show Cause upon the Money Store was adequate notice of the pending sale, in accordance with the requirements of *Mennonite Board of Missions.* The Money Store's decision not to file an answer to the Rule to Show Cause operates as a waiver of any right to a hearing, resulting in a discharge of the lien after the unattended hearing. The majority's reliance upon *In re Tax Sale of 1980,* a case involving an upset sale, takes no notice of the separate statutory procedural requirements for upset and judicial sales. Holding that the Bureau must send notice of the date of a hearing to a party who chooses to disregard the Rule to Show Cause nullifies the Rule. As noted by the trial court, the mortgagee was clearly informed how to object to the judicial tax sale and elected not to follow the court's directions.