Robert E. PLANK; Robert E. Plank, Jr.; Steven D. Gladstone and M.A. Swift, Appellants,

v.

**MONROE COUNTY TAX CLAIM BUREAU.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1999.

Decided July 26, 1999.

Steven D. Gladstone, Mount Pocono, for appellants.

James F. Marsh, Stroudsburg, for appellee.

Before SMITH, J., FRIEDMAN, J., and KELLEY, J.

FRIEDMAN, Judge.

Robert E. Plank; Robert E. Plank, Jr.; Steven D. Gladstone and M.A. Swift (collectively, Purchasers), successful bidders at a tax sale, appeal from an order of the Court of Common Pleas of Monroe County (trial court) which denied their Petition to Set Aside Tax Sale. We affirm.

In 1990, Edward and Marianne Avosso (Avossos) purchased the property at issue, subject to a mortgage.[1] (R.R. Exhibit A.) As a result of the Avossos' failure to pay real estate taxes on their property, the Monroe County Tax Claim Bureau (Bu-

reau) exposed the Avossos' property to an upset sale on October 19, 1994, under section 601 of the Real Estate Tax Sale Law (Law).[2] (Exhibit A to Bureau's Petition for Rule to Show Cause.) The property was not sold at the upset sale and, as a result, on January 16, 1998, the Bureau filed a "Consolidated Petition to Sell Properties at Judicial Sale"[3] (Petition for Tax Sale), petitioning the trial court for a "free and clear" judicial tax sale of the property in accordance with section 610 of the Law, 72 P.S. § 5860.610.[4] (O.R. No. 10.) In its Petition for Tax Sale, the Bureau identified a mortgage against the property held by Bankers Trust Company (Bankers Trust). Pursuant to the Petition for Tax Sale, the trial court issued a Rule to Show Cause why the property "should not be sold free and clear of all taxes and municipal claims, liens, or mortgages, ground rents, charges and estates of whatsoever kind." (O.R. No. 10.) The Rule, which was served upon Bankers Trust, (O.R. No. 10), was returnable on April 7, 1998; on April 7, 1998, the trial court made the Rule absolute and scheduled the sale. (O.R. No. 11.)

At the judicial tax sale, held on May 18, 1998, Purchasers purchased the property for $21,200. (R.R. Exhibit G.) The Bureau issued a deed to Purchasers on May 20, 1998, and recorded the deed on June 11, 1998. (R.R. Exhibit G.) At the time of the purchase, neither the Bureau nor Purchasers were aware that Bankers Trust had reassigned its mortgage to Altegra Credit Company (Altegra) on November 4, 1997 and that Altegra held the mortgage

---

1. When the Avossos purchased the property, they obtained a mortgage from City & Suburban Land Development Corporation. (R.R. Exhibit B.) City & Suburban Land Development Corporation immediately assigned the mortgage to American Financial Corporation of Tampa, (R.R. Exhibit C), which reassigned the mortgage to Bankers Trust Company in 1992. (R.R. Exhibit D.)

2. Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.601.

3. The property at issue was one of four unrelated properties that the Bureau was seeking permission to sell at a tax sale.

4. That section provides that, where the upset price is not bid, the bureau may petition the court of common pleas to sell the property at a judicial sale under section 612 of the Law, 72 P.S. § 5860.612.

on the property.[5] Consequently, although the Bureau notified Bankers Trust of the judicial tax sale, the Bureau did not give notice to the current mortgagee, Altegra.

On September 3, 1998, after learning that they had purchased the property subject to Altegra's mortgage, Purchasers filed their Petition to Set Aside Tax Sale, alleging that the Bureau erred by: (1) failing to identify Altegra as a lienholder, or serve the Rule to Show Cause on Altegra; and (2) failing to serve prior owner Edward Avosso with the Rule to Show Cause or with notice of the judicial tax sale. In the Petition to Set Aside Tax Sale, Purchasers requested that the sale be declared void and that the Bureau refund $23,128.12 to Purchasers. (R.R. Exhibit H.)

On September 4, 1998, the trial court entered a rule returnable on October 5, 1998. On October 7, 1998, after the Bureau had failed to respond to this rule, Purchasers filed a motion to make the rule absolute. By Order of October 9, 1998, the trial court dismissed Purchasers' Petition to Set Aside Tax Sale. Reasoning that the Bureau owed no duty to provide title information to purchasers at a judicial sale, (op. at 3), the trial court held that the Petition to Set Aside Tax Sale disclosed "no basis for the *purchaser* at the Judicial Sale to set aside the sale ...." (Op. at 2.) (Emphasis in original.)

■ On appeal,[6] Purchasers assert three allegations of error. First, they argue that the Bureau's failure to notify Edward Avosso and Altegra requires that the tax sale be voided. Second, they argue that, because the Bureau's Petition for Tax Sale was not accompanied by a full and complete title search which identified all lienholders, the Petition for Tax Sale was defective on its face, and the trial court erred in issuing the Rule scheduling the tax sale based on that defective Petition for Tax Sale. Third, Purchasers argue that, because the Bureau did not file an answer to Purchasers' Petition to Set Aside Tax Sale, the trial court should have granted Purchasers' October 7, 1998 motion for a rule absolute. However, none of Purchasers' arguments entitles them to have the tax sale set aside.

## The Bureau's failure to notify the prior owner of the sale

■ Even if the Bureau failed to notify Edward Avosso of the tax sale, Purchasers lack standing to attack the validity of the tax sale based on that lack of notice. The procedure for contesting tax sales is set out in section 607 of the Law, 72 P.S. § 5860.607. Under section 607(b), 72 P.S. § 5860.607(b), "owners" or "lien creditors" may file objections or exceptions to a tax sale within thirty days after the court has made a confirmation nisi of the sale. Because here Purchasers were not owners or lien creditors at the time of the tax sale, they lack standing to file objections or exceptions under section 607(b) of the Law. *See In re Kidd,* 73 Pa.Cmwlth. 85, 457 A.2d 231 (1983). If no exceptions or objections are timely filed or if they are overruled, the trial court shall enter a decree of absolute confirmation of the sale. Section 607(g) of the Law, 72 P.S. § 5860.607(g). Here, after finding that no exceptions or objections were filed, the trial court entered a decree of absolute

---

**5.** The Bureau conducted two record searches, on February 24, 1997 and October 30, 1997, which showed Bankers Trust as the mortgagee. (Bureau's brief at 5.) The reassignment of the mortgage to Altegra was not recorded until November 19, 1997, twenty days after the Bureau's final search, approximately two months before the Bureau filed its Petition for Tax Sale and approximately six months before the tax sale. (R.R. Exhibit E.)

**6.** Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law. *Casaday v. Clearfield County Tax Claim Bureau,* 156 Pa. Cmwlth. 317, 627 A.2d 257 (1993).

confirmation of the sale on December 8, 1998.[7] (O.R. No. 15.)

■ Once a tax sale has been absolutely confirmed, no person may, by judicial proceedings, inquire into a bureau's proceedings with respect to the sale, except for the giving of notice under the Law. Section 607(g) of the Law, 72 P.S. § 5860.607(g). Under section 607(g), after the sale is confirmed absolutely, a successful bidder may file an action to quiet title. *In re Kidd,* 24 Pa. D. & C.3d 528 (1981), *aff'd,* 73 Pa. Cmwlth. 85, 457 A.2d 231 (1983). However, section 607(g) does not permit a successful bidder to file a petition to set aside the sale based on a prior owner's lack of notice of the sale. Only a person who has suffered an injury as a result of the claimed lack of notice may raise it. *See, e.g., C. Everett, Inc. v. Ayres,* 22 Pa. Cmwlth. 422, 349 A.2d 514 (1975). Because section 607(b) precludes a successful bidder from raising a prior owner's lack of notice **prior** to absolute confirmation of the sale, it necessarily follows that a successful bidder may not raise that same lack of

notice **after** absolute confirmation.[8] Accordingly, Purchasers first argument must fail.[9]

### The Bureau's failure to identify the mortgagee and notify the mortgagee of the tax sale

■ For the reasons stated above, Purchasers also lack standing to raise the lack of notice to the mortgagee. Furthermore, failure of notice to a mortgagee does not vitiate a tax sale. *In re Tax Claim Bureau of Lehigh County,* 96 Pa.Cmwlth. 452, 507 A.2d 1294 (1986), *appeal denied,* 514 Pa. 640, 523 A.2d 346 (1987).[10] Thus, contrary to Purchaser's contention, the Bureau's failure to identify Altegra as a lienholder and to notify Altegra of the judicial tax sale does not require that the sale be set aside. Purchasers contend that the trial court violated sections 610 and 612 of the Law, 72 P.S. § 5860.610 and § 5860.612, by scheduling the judicial tax sale based upon the Bureau's title search which did not disclose Altegra's mortgage. We disagree.

7. Apparently, the trial court entered its December 8, 1998 rule absolute, confirming the judicial sale, in response to the Bureau's petition for confirmation of the sale. However, the original record does not include the Bureau's petition for confirmation, the trial court's confirmation nisi of the sale nor the Bureau's motion for a rule absolute. Therefore, we have deduced, solely from a review of the docket entries, that the procedure described in 72 P.S. § 5860.607(g) was followed and that the referenced documents were filed.

8. This situation is distinguished from the situations presented in *M.J.M. Financial Services, Inc. v. Burgess by Dignazio,* 111 Pa.Cmwlth. 301, 533 A.2d 1092 (1987), in which we held that a successful bidder had standing to file exceptions to the setting aside of the sale due to the bureau's improper service on the prior owner, and *In re Judicial Sale, Tax Claim Bureau of Northampton County,* 720 A.2d 818 (Pa.Cmwlth.1998), where we held that a successful bidder could sue for a refund of its purchase price after the tax sale was declared void as a result of improper notice on the prior owner.

9. Moreover, because Purchasers did not include this issue in their Statement of Matters Complained of on Appeal, the trial court opinion did not address it, and it is deemed waived. *See Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306 (1998). Additionally, although Purchasers, in their brief to this court, **mentioned** the lack of notice with respect to Edward Avosso, Purchasers did not actually **brief** this issue. Because issues not briefed are waived, Purchasers have further failed to preserve this issue for appeal. *See Van Duser v. Unemployment Compensation Board of Review,* 164 Pa.Cmwlth. 96, 642 A.2d 544 (1994).

10. A purchaser at a judicial tax sale takes title to the property free and clear of all mortgages and liens. Section 612 of the Law, 72 P.S. § 5860.612. However, where a mortgagee is not provided adequate notice of the judicial tax sale, that mortgagee's lien is undischarged and the purchasers at the judicial tax sale take the property subject to that mortgage. *In re Tax Claim Bureau of Westmoreland County,* 149 Pa.Cmwlth. 532, 613 A.2d 634, *appeal denied,* 533 Pa. 615, 618 A.2d 404 (1992).

Section 610 of the Law[11] requires that a bureau's petition for a tax sale be accompanied by a search showing the state of the record before the court may issue a rule to show cause. Section 612 of the Law[12] provides that, if the court is satisfied that the facts stated in a bureau's petition for tax sale are true, the court shall order the sale. Here, the trial court properly ruled that the Bureau owed Purchasers no duty to provide correct and current title information. "Clearly, the Law requires that a search showing all outstanding claims accompany the [b]ureau's petition to the trial court...." *Capenos v. Lawrence County Tax Claim Bureau,* 149 Pa.Cmwlth. 323, 613 A.2d 112, 115 (1992). The Law does not, however, require that that search be up-to-date as of the date the bureau files its petition for tax sale.[13]

The risk that a tax bureau negligently performed the search or, as here, the risk that title status changed between the time the Bureau performed the search and the date of sale, must be borne by Purchasers. The rule of caveat emptor, i.e. let the buyer beware, applies to property sold at real estate tax sales. *In re Judicial Sale, Tax Claim Bureau of Northampton County,* 720 A.2d 818 (Pa. Cmwlth.1998). Our legislature has stated unequivocally its intention that the rule apply to such sales:

> provided by this act, and that the facts stated in the petition are true, it shall order and decree that said property be sold at a subsequent day to be fixed by the court, freed and cleared of all tax and municipal claims, mortgages, liens, charges and estates, except separately taxed ground rents, to the highest bidder....

11. Section 610 provides in pertinent part:

In cases where the upset price shall not be bid at any such sale, the sale shall be continued, but not beyond the end of the calendar year, without further advertising, and the bureau may, at any time during or after the continuance, and shall, immediately at the written direction of a taxing district, file its petition in the court of common pleas of the county to sell the property under sections 612 and 612.1. The bureau shall set forth on the petition (1) the tax claim upon which the property was exposed for sale, (2) that neither the owner, his heirs or legal representatives of any lien creditor, his heirs, assigns or legal representatives or any lien creditor, his heirs, assigns or legal representatives or other person interested has caused stay of sale, discharge of tax claim or removal from sale, (3) that the property was exposed to public sale and the date of such sale, (4) that before exposing the property to public sale the bureau fixed an upset price, as herein provided, and (5) *that it was unable to obtain a bid sufficient to pay said upset price. Upon presentation of such petition, accompanied with searches showing the state of the record and the ownership of the property and all ... mortgages ... against the same, the court shall grant a rule upon all parties thus shown to be interested to appear and show cause why a decree should not be made that said property be sold, freed and cleared of their respective ... mortgages. ...*

72 P.S. § 5860.610 (Emphasis added.)

12. Section 612(a) of the Law, 72 P.S. § 5860.612(a), provides in pertinent part:

If upon hearing, the court is satisfied that service of the rule has been made upon the parties named in the rule in the manner

13. The Law is silent on this point. While the legislature in section 610 of the Law, 72 P.S. § 5860.610, has required that a bureau's petition for a judicial tax sale must be "accompanied with searches showing the state of the record and the ownership of the property and all tax and municipal claims, liens, mortgages, ground rents, charges and estates against the same," the legislature did not also require that the search be current as of the date of the filing of the petition. Here, the Bureau's last record search was conducted on October 30, 1997. Altegra's mortgage was recorded on November 19, 1997, twenty days later. The Bureau filed its Petition for Tax Sale on January 16, 1998, 78 days after its last record search and 63 days after the intervening mortgage was recorded. While its petition was accompanied by the record search information, nothing in the petition indicated the date of the search. To grant Purchasers relief here, we would have to require that a bureau's petition for tax sale be accompanied by a record search current as of the date of the filing of the petition or at least that the petition reflect the date of the last record search. We believe, however, that, if the legislature intends to make bureaus liable to purchasers at tax sales in cases such as this, it is up to the legislature to so state in the Law.

In all public sales of land hereafter made by the treasurer or commissioners of the several counties of this commonwealth, in pursuance of the laws of this commonwealth the rule of caveat emptor shall apply, except in cases of double assessment, or where the taxes on which the sale is made shall have been previously paid, or where the lands do not lie within the county; and neither said treasurer nor commissioners shall be required to refund the purchase money, costs or taxes paid upon any tract or tracts of land as sold as aforesaid.

Section 1 of the Act of April 21, 1856, P.L. 477, *as amended,* 72 P.S. § 5931. It is well settled that land purchased at a tax sale comes with no guarantee of title. *Fulton County v. Tate,* 47 Pa. 532 (1864). In *Fulton County,* the county treasurer sued defendants, successful bidders at a tax sale, when defendants failed to pay the bid price after the treasurer tendered the deed to them. Our supreme court gave short shrift to defendants' argument that they did not have to follow through on their purchase because the property's title was questionable; the court explained that the "treasurer or a sheriff or other person selling under the authority of the law, guarantees no title." *Id.* at 534.

Purchasers' argument would require the bureau and the trial court to be insurers of title, and this is not the law. Here, the trial court was satisfied that the Bureau's petition was accompanied by a search of the record. The trial court was not required to do more. Any loss incurred by Purchasers results from their own failure to take reasonable steps to protect themselves prior to making their bid at the sale. *See Bankers Trust Co. v. Tax Claim Bureau,* 723 A.2d 1092 (Pa.Cmwlth.1999).

### Rule Absolute

▮▮▮ Finally, Purchasers contend that, because the Bureau did not file an answer to Purchasers' Petition to Set Aside Tax Sale in response to the Rule to Show Cause, entered on September 4, 1998 and made returnable on October 5, 1998, the trial court was required to enter a rule absolute on Purchasers' Petition to Set Aside Tax Sale and erred when it did not do so. We disagree.

▮▮▮▮ Pa.R.C.P. No. 206.1 sets out the procedure for rules to show cause.[14] Pa.R.C.P. No. 206.7(a), which governs the procedure when no answer to the rule is filed, provides that, "(i)f an answer is not filed, all averments of fact in the petition may be deemed admitted for the purposes of this subdivision and the court shall enter **an appropriate order.**" Significantly, that rule does not require that the court enter a rule absolute.[15]

**14.** In its opinion, the trial court states that the Bureau's failure to file an answer to the Rule to Show Cause entered on Purchaser's Petition to Set Aside Tax Sale is "of no moment." (Op. at 3.) Citing *Tax Claim Bureau of Westmoreland County,* 149 Pa.Cmwlth. 532, 613 A.2d 634 (1992), the trial court explained: "In modern practice, the Rules of Civil Procedure govern pleadings in civil actions and define what is a civil action. Nowhere in the Rules of Civil Procedure is a Rule to Show Cause made subject to the Rules of Civil Procedure; thus, failure to answer a Rule to Show Cause or to enter an appearance upon it is of no moment." (Op. at 3.) However, the trial court's reliance on *Westmoreland County* for this point was misplaced because that case was decided before the amendment of the Rules of Civil Procedure governing rules to show cause, effective 1996. Because *Westmoreland County's*

explanation concerning rules to show cause related to rescinded Rule 209, it is not controlling here. Instead, the trial court should have considered Pa.R.C.P. No. 206.1, effective January 1, 1996.

**15.** We note that there are two classes of rules; peremptory and absolute. Peremptory rules are those which command performance without an opportunity to respond. A rule upon a plaintiff to file a complaint under Pa.R.C.P. No. 1037 is an example of such a rule. It is issued as a matter of course by the prothonotary upon a defendant's praecipe. Rules to show cause are rules *nisi,* which are required to be allowed by the court. After notice and an opportunity to respond, they are either discharged or made absolute by the court. A rule absolute commands that the subject matter of the rule be enforced. Black's Law Dictionary 1331 (6 th ed.1992). Here, had the

 Here, the trial court's decision not to make the rule absolute comported with Pa.R.C.P. No. 206.7. The trial court deemed admitted all of the *facts* of Purchaser's Petition to Set Aside Tax Sale – the salient facts being the Bureau's failure to identify Altegra's mortgage interest in the property and the Bureau's failure to notify Altegra or Edward Avosso of the judicial tax sale. Purchasers argue that the trial court should have treated their contention that the tax sale was void, which is a legal conclusion, in the same fashion. We disagree. The lack of a responsive pleading, where required, to a rule to show cause results only in the admission of factual averments, not legal conclusions. *Michener v. Montgomery County Tax Claim Bureau,* 671 A.2d 285 (Pa.Cmwlth.1996).

By directing the court to enter "an appropriate order," Rule 206.7 grants the trial court discretion to determine whether it is appropriate to make the rule absolute. Here, based upon the admitted facts of the Petition to Set Aside the Tax Sale, the trial court entered "an appropriate order." The trial court properly found that, despite the deemed admitted facts, the law applying to real estate tax sales did not entitle Purchasers to have the tax sale declared void. Thus, the trial court was not required to make the Rule absolute.

Accordingly, we affirm the order of the trial court.

### O R D E R

AND NOW, this 26th day of July, 1999, the order of the Court of Common Pleas of Monroe County, dated October 9, 1998, is hereby affirmed.

trial court made the rule absolute, Purchasers' Rule to Show Cause would have become final, and the tax sale would have been set aside.