**Rebecca L. BELL and Richard M. Bell, III, Appellants,**

v.

**BERKS COUNTY TAX CLAIM BUREAU.**

Commonwealth Court of Pennsylvania.

Argued June 5, 2003.

Decided Sept. 23, 2003.

---

Rebecca L. Bell, Pottstown, for appellants.

Jan D. Krafczek, Reading, for appellee.

BEFORE: PELLEGRINI, Judge, LEAVITT, Judge (P.), and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Rebecca L. Bell and Richard M. Bell, III (Bells) appeal the Order of the Court of Common Pleas of Berks County (trial court) that denied their tax appeal. In doing so, the trial court affirmed the decision of the Berks County Tax Claim Bureau (Bureau) to disallow the Bells' exceptions to a real estate tax that they claim had been discharged by the judicial sale at which they purchased the real estate in question.[1]

The relevant facts are not in dispute. At a judicial tax sale[2] held on September

---

1. The sale was held by the Bureau to satisfy tax liens against the property under the provisions of the Real Estate Tax Sale Law (the Tax Sale Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

2. In a judicial sale property is sold by court order free of all liens and encumbrances. Section 610 of the Tax Sale Law, 72 P.S. § 5860.610; Section 612 of the Tax Sale Law, 72 P.S. § 5860.612.

29, 2000, the Bells purchased a property at 40 Old River Road (Property) in Berks County for $5,370.04. One year earlier, September 28, 1999, the Property had been offered at an upset sale;[3] however, no bid equal to or in excess of the upset price was made. The Bureau then petitioned for its sale at a judicial sale of the Property. On June 15, 2000, the trial court ordered the judicial sale of the Property, as well as many properties in Berks County, and it scheduled the sale for June 27, 2000. The properties were to be sold "free and clear of all taxes and municipal claims, mortgages, liens, charges and estates of whatever kind to the highest bidder."[4] On June 21, 2000, the trial court vacated its order of June 15, 2000, and the scheduled judicial sale did not take place.

On August 21, 2000,[5] the trial court entered an order continuing the judicial sale from June 27, 2000 to September 29, 2000. In the interim, on July 1, 2000, the 2000–2001 school taxes were levied against the Property. The trial court's order that the properties were to be sold free and clear of all liens contained the following condition:

> *cause why a decree should not be made that said property be sold, freed and cleared of their respective tax and municipal claims, liens, mortgages, charges and estates, except separately taxed ground rents.* The rule shall be made returnable in not more than thirty (30) days from the date the petition was presented or as otherwise determined by the court.
>
> 72 P.S. 5860.610 (emphasis added).

3. In an upset sale property is sold subject to all unpaid taxes, liens and costs. Section 304 of the Tax Sale Law, 72 P.S. § 5860.304, and Section 605 of the Tax Sale Law, 72 P.S. § 5860.605.

4. The Bureau filed a petition for judicial sale under Section 610 of the Tax Sale Law, which provides:

   In cases where the upset price shall not be bid at any such sale, the sale shall be continued, but not beyond the end of the calendar year, without further advertising, and the bureau may, at any time during or after the continuance, and shall, immediately at the written direction of a taxing district, file its petition in the court of common pleas of the county to sell the property under sections 612 and 612.1. The bureau shall set forth on the petition (1) the tax claim upon which the property was exposed for sale, (2) that neither the owner, his heirs or legal representatives or any lien creditor, his heirs, assigns or legal representatives or other person interested has caused stay of sale, discharge of tax claim or removal from sale, (3) that the property was exposed to public sale and the date of such sale, (4) that before exposing the property to public sale the bureau fixed an upset price, as herein provided, and (5) that it was unable to obtain a bid sufficient to pay said upset price. Upon the presentation of such petition, accompanied with searches, showing the state of the record and the ownership of the property and all tax and municipal claims, liens, mortgages, ground rents, charges and estates against the same, *the court shall grant a rule upon all parties thus shown to be interested to appear and show*

5. The trial court entered the August 21, 2000 order "*NUNC PRO TUNC,* as though entered by the Court on June 26, 2000," in an apparent effort to avoid the divesting of the lien for school taxes which attached on July 1, 2000. Reproduced Record 8a (R.R. ——). Had the judicial sale been held on June 27, 2000, the lien for the 2000–2001 school taxes would have remained valid because the school tax would have been levied on July 1, 2000, *after* the June 27, 2000 judicial sale. In order to preserve the lien for the 2000–2001 school taxes, the Bureau obtained a provision as part of the court order of August 21, 2000 directing that the lien would remain valid, as though the sale had been held prior to July 1, 2000. The August 21, 2000, court order provides: "properties exposed for sale at Public Sale on the 27th day of June, 2000 ... or at a continued day of sale as may be announced on the day fixed for sale by the Director of the Tax Claim Bureau of the County of Berks be sold free and clear of all taxes and municipal claims, mortgages, liens, charges and estates of whatsoever kind, to the highest bidder....Provided, however, this Order shall not divest the 2000 School Taxes assessed against said properties." R.R. 7a–8a.

Provided, however, this Order shall not divest the 2000 school taxes assessed against the properties.

R.R. 8a. The judicial sale was held on September 29, 2000, as scheduled, and the Bells purchased the Property.

■ On May 4, 2001, the Bells received a Notice of Return and Claim from the Bureau seeking payment of the 2000–2001 school taxes.[6] The Bells filed exceptions to the school taxes for 2000, and, after an administrative hearing, the Bureau disallowed the Bells' exceptions. The Bells appealed to the trial court, which denied the appeal and affirmed the decision of the Bureau. This appeal followed.[7]

The Bells assert three claims in their appeal. First, they assert that the trial court did not have the power to order a school tax lien to survive a judicial tax sale. Second, in the alternative, the Bells assert that the trial court erred in failing to set aside the portion of the 2000 school taxes for that period of time that occurred prior to the transfer of ownership to the Bells, which took place on February 21, 2001. Third, the Bells assert the right to a jury trial on their appeal from the Bureau's determination.

The heart of the Bells' appeal is that the trial court's order allowing the tax lien to survive the judicial tax sale is invalid because it contradicts the express language of Section 612 of the Tax Sale Law, which requires that the property be sold "freed and cleared of all tax and municipal claims." 72 P.S. § 5860.612.[8] The Bureau

6. The amount due was $1600.32, plus $25.00 in costs.

7. Our scope of review in tax sale cases is limited to a determination of whether the trial court abused its discretion, rendered a decision which lacked supporting evidence, or clearly erred as a matter of law. *In re Serfass*, 651 A.2d 677 (Pa.Cmwlth.1994).

8. Section 612 of the Tax Sale Law provides: (a) If upon hearing, the court is satisfied that service of the rule has been made upon the parties named in the rule, in the manner provided by this act, and that the facts stated in the petition are true, it *shall order* and decree that said *property be sold* at a subsequent day to be fixed by the court, *freed and cleared of all tax and municipal claims*, mortgages, liens, charges and estates, except separately taxed ground rents, to the highest bidder, and that the purchaser at such sale shall take and thereafter have an absolute title to the property *sold free and clear of all tax and municipal claims*, mortgages, liens, charges and estates of whatsoever kind, except ground rents, separately taxed. Out of the proceeds of such sale shall be paid the costs set forth in the upset price at the prior sale, and the additional costs incurred relative to this sale, including the fee for title search. The court order may specify that no sale shall be made except to the county unless a bid equal to such costs is offered. The remainder of said proceeds shall be distributed by the office designated by the county commissioners under Section 205. After the purchaser shall have paid over the purchase price, the bureau shall make and deliver a deed in the manner hereinbefore provided.
(b) When aforesaid petition for sale is presented within three (3) months after the date of the scheduled upset sale, the court, in its order, shall direct that no further advertisement is required. In cases where said petition is presented after the three (3) month period has expired, the court shall, in its order fixing a subsequent sale, direct that the readvertisement of such sale need not be published three (3) consecutive weeks, nor include a list and description of the lands to be sold, but need only be advertised by one (1) insertion in one (1) or two (2) newspapers as hereinbefore provided for such advertisements, at least thirty (30) days prior to the sale, and include the purpose, the time, the place and the *terms of such sale* with a reference to the prior advertisement.
(c) In any such petition for sale, the bureau may, if it deems the same advantageous, request the court to fix the place of sale at the property to be sold, and if the court is convinced the taxing districts interested will be benefited thereby, it shall order the

counters that the Bureau has the right to fix the "terms of such sale" under Section 612(b) of the Tax Sales Law, and, thus, the trial court may specify which liens are to be discharged in a judicial sale and which are not. Here, the trial court's order specifically provided that the Property would not be sold "free and clear" of the 2000 School Taxes, which gave the Bells full notice of this sale term. Further, the Bureau notes that the use of proceeds of a judicial sale of property are governed by Section 205 of the Tax Sale Law, 72 P.S. § 5860.205, which does not authorize their use for current taxes levied on property. Accordingly, the General Assembly intended a judicial sale to divest *delinquent* taxes but not *future* taxes.[9]

The Tax Sale Law provides that the sale of real estate at a judicial sale will satisfy "*all taxes ... levied* on property in this Commonwealth by any taxing district." Section 301 of the Tax Sale Law, 72 P.S. § 5860.301 (emphasis added). "Taxes" is defined to mean "all taxes, with added interest and penalties, *levied* by a taxing district upon real property." Section 102 of the Tax Sale Law, 72 P.S. § 5860.102 (emphasis added). The question is whether "*all taxes levied*"[10] covers current taxes as well as delinquent taxes. To resolve this question, it is appropriate to review the Tax Sale Law in its entirety.

Unpaid real estate taxes are addressed initially by a public upset sale. The upset price includes all taxes and municipal claims against the property, including

---

sale to be held on the property to be sold. (emphasis added)

72 P.S. § 5860.612 (emphasis added).

**9.** Section 312 of the Tax Sale Law provides:

Any such claim for taxes, if such taxes were returned to the bureau within the time required by this act, shall remain a lien upon said property until fully paid and satisfied, or until said property shall be sold as provided in this act. If a tax is not returned to the bureau within the time required by this act, its lien on the property shall be wholly lost. But where a tax has not been returned as required by this act, a taxing district may nevertheless proceed, by action in assumpsit, to recover the amount of any taxes due and owing by an owner at any time within six (6) years after the taxes first became due.

72 P.S. § 5860.312.

**10.** Taxes are ordinarily a lien from the time they are levied, and the owner on the date of levy is liable for taxes for the whole year. *Reading Trust Co. v. Campbell*, 159 Pa.Super. 197, 48 A.2d 72 (1946). Section 2 of the Pennsylvania Municipal Claims and Tax Liens Act (Tax Liens Act), Act of May 16, 1923, P.L. 207, 53 P.S. § 7103, provides: "All taxes ... lawfully imposed or assessed on any property in this Commonwealth ... shall be ... a first

lien on said property." Section 1 of the Tax Liens Act, 53 P.S. § 7102 provides: "All taxes which may hereafter be lawfully imposed and assessed by counties, ... and school districts on real property, are hereby declared to be a first lien on such real property, ... *and every such lien shall date from the day on which the millage or tax rate is fixed by the proper authority of any such political subdivision ....*" (emphasis added). The tax levied on July 1, 2000, is a lien that is included in "all tax liens" divested by a judicial tax sale. It must be noted, however, that the owner of the property on July 1, 2000, was not the recorded deed owner (the previous owner who was delinquent in paying the taxes). The Bureau assumed ownership. At an upset sale where there are no bids of the upset sale price, all rights to the property, that is, legal title, are transferred from the property owners of record to the tax claim bureau, as trustee, by operation of law. *Commonwealth v. Sprock*, 795 A.2d 1100 (Pa.Cmwlth.2002). The owner's right of redemption is extinguished at the upset sale. Section 501(c) of the Tax Sale Law, 72 P.S. § 5860.501(c). The Tax Sale Law makes no provision for the transfer of this obligation from the Bureau to the judicial tax sale purchaser, and it cannot be accomplished by a court order reserving the lien for current taxes. The Bureau can only preserve the *in rem* lien for current taxes by the vehicle of the upset sale.

"taxes levied for the *current year, whether or not returned,* a record of which shall be furnished to the bureau by tax collectors, receivers of taxes and taxing districts." [11] Section 605 of the Tax Sale Law, 72 P.S. § 5860.605 (emphasis added). Title to property sold at an upset sale is conveyed to the winning bidder "subject to the lien of every recorded obligation, claim, lien, estate, mortgage, ground rent and Commonwealth tax lien *not included in the upset price."* Section 609 of the Tax Sale Law, 72 P.S. § 5860.609 (emphasis added). The goal of an upset sale is to realize a price sufficient to bring the tax obligations on the property fully current. In sum, the Tax Sale Law only permits a sale of property where a tax delinquency has occurred; however, once the sale is undertaken, the upset sale proceeds are used to pay both delinquent and current taxes. Otherwise, by the time the property is sold under the statutory procedures, the property would be encumbered by additional delinquent taxes.

Where the upset price is not bid, as occurred here, a bureau has several options. It may sell the property at a private sale "free and clear of all tax claims and tax judgments." Section 613(a) of the Tax Sale Law, 72 P.S. § 5860.613(a). In a private sale, a bureau "shall convey title to the purchaser free, clear and discharged of all tax claims and tax judgments, *whether or not returned, filed or entered,* as provided by this or any other act." Section 615 of the Tax Sale Law, 72 P.S. § 5860.615 (emphasis added). Alternatively, a bureau

may elect to continue the upset sale to another date, amending the upset sale price as needed. Section 603 of the Tax Sale Law, 72 P.S. § 5860.603. Finally, the bureau has the option to petition the trial court for leave to sell the property at a judicial sale under Section 610 of the Tax Sale Law, 72 P.S. § 5860.610.

The first step in a judicial sale is the filing of a petition. The petition must include "the tax claim upon which the property was exposed for sale." *Id.* This is because the statute only permits the Bureau to sell property if a tax claim has become "absolute." [12] Section 601(1)(i) of the Tax Sale Law, 72 P.S. § 5860.601(1)(i). The petition must assert that the property has been exposed to public sale at the upset sale price, and that no bid at the upset sale price was made. The petition must be accompanied "with searches, showing the state of the record and the ownership of the property and all tax and municipal claims, liens, mortgages, ground rents, charges and estates" against the property because the property will be sold "freed and cleared of their respective tax and municipal claims, liens, mortgages, charges and estates, except separately taxed ground rents." Section 610 of the Tax Sale Law, 72 P.S. § 5860.610.

Next, the trial court must issue a rule upon all parties with an interest in the property, including owners, mortgage holders and lienholders. The rule directs these persons to appear and show cause

---

11. A "return" of property and delinquent taxes is made by the tax collector, etc., between January 1 and April 30 of the year after the tax is levied. (The county commissioners may establish or fix a return date for their county within these dates.) Section 306 of the Tax Sale Law, 72 P.S. § 5860.306. The record of the unpaid tax is, therefore, entered into the records of the tax claim bureau and is available for inclusion in the upset sale price.

12. A claim becomes absolute under the specific provisions of the statute if the tax claim remains unpaid by the first day of January following the notice of unpaid taxes which is issued before the thirty-first day of July that the taxes for the previous year were unpaid. Sections 311 and 308 of the Tax Sale Law, 72 P.S. §§ 5860.311, 5860.308.

why the property should not be sold "freed and cleared" of all claims. Section 610 of the Tax Sale Law, 72 P.S. § 5860.610. The court shall order the property sold at a judicial sale only if satisfied that service of the rule has been made and that the facts in the petition are true. Section 612 of the Tax Sale Law, 72 P.S. § 5860.612.

■ The Tax Sale Law's procedures for selling a property at either an upset sale or a judicial sale are detailed and precise. At an upset sale, all recorded obligations not included in the upset price survive the sale, but at a judicial sale no liens or claims survive the sale. The trial court devised a remedy that combined aspects of the upset sale and the judicial sale. It did so without the requisite legislative authority. There is simply no language in the Tax Sale Law that authorizes the trial court to exempt certain claims or taxes from the sweep of the mandate that property sold at a judicial sale is sold "freed and cleared of all tax and municipal claims...." Section 612(a) of the Tax Sale Law, 72 P.S. § 5860.612(a).

The Bureau's assertion that the Legislature intended only to divest delinquent taxes, not current taxes, fails to account for the statutory provisions that specifically allow for the recovery of the amount due on *current taxes* in an upset sale. By contrast, the provisions in the Tax Sale Law relating to judicial sale do not categorize the taxes extinguished by the tax sale, whether delinquent or current. Indeed, it does not assign different treatment for private liens, which are also extinguished.

The Bureau's reliance on "terms of such sale" used in Section 612(b) of the Tax Sale Law is also unavailing. Section 612(b) prescribes the details for advertisement of a judicial sale and requires that the public advertisement "include the purpose, the time, the place, and the terms of such sale with a reference to the prior advertisement." 72 P.S. § 5860.612(b). This language cannot be construed to contradict the statutory mandate that the court "shall" order that the property be sold "freed and clear of all tax and municipal claims...." 72 P.S. § 5860.612(a).

The only exception to the rule that all liens are divested in a judicial sale is where a lienholder did not receive notice of the hearing on the rule. The divestiture of the lien is not effected by the issuance of the rule or the return day thereof. It is accomplished by the hearing at which the party that sought the rule has the burden of proof. *In re Tax Claim Bureau of Westmoreland County,* 149 Pa.Cmwlth. 532, 613 A.2d 634 (1992). Since the lienholder clearly has a legally protected property interest, he is entitled to notice reasonably calculated to apprise him of a pending tax sale, and an opportunity to assert any objection to the sale. *Mennonite Board of Missions v. Adams,* 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983). Failure of a trial court to give adequate notice results in an undischarged lien, and the purchaser at the judicial sale takes the property subject to that lien. *Muhlenberg Township Authority v. Fisher,* 94 Pa. Cmwlth. 351, 503 A.2d 1022 (1986). This exception, however, does not create authority in the trial court [13] to reserve spe-

---

13. The trial court relied upon cases where liens have survived the tax sale because the lien holder did not receive proper notice of the sale. *Plank v. Monroe County Tax Claim Bureau,* 735 A.2d 178 (Pa.Cmwlth.1999); *In re Tax Claim Bureau of Westmoreland County,* 149 Pa.Cmwlth. 532, 613 A.2d 634 (1992);

*Muhlenberg Township Authority v. Fisher,* 94 Pa.Cmwlth. 351, 503 A.2d 1022 (1986); *Petition of Thomas Tax Sale,* 10 D. & C.2d 686 (1958). The trial court states that in this instance the Bureau intended to sell the property subject to a particular lien, and obtained a court order authorizing the sale subject to

cific liens from divestiture in contradiction of Section 612(a) of the Tax Sale Law.

We recognize that the consequences of this mandate are troubling. As the Bureau notes, it means that the Bells are able to hold the Property free of school taxes, at least from February 21 to July 1. However, the Bureau could have scheduled another upset sale as a way to retain the school tax lien. Instead, the Bureau petitioned the trial court for permission to sell the property free and clear. It chose this remedy. The issue the Bureau has identified is an important one, but it is an issue that should be addressed by the legislature. This Court may not rewrite legislation, particularly legislation that is to be strictly construed.[14]

We hold that the trial court erred in its order that the Property would be sold *not* "freed and cleared" of the 2000 school taxes. This order violated Section 612(a) of the Tax Sale Law. Having so determined, we need not address the Bells' other issues.[15]

Accordingly, the order of the trial court is reversed to the extent it disallowed the Bells' exceptions to the 2000 school tax.

### ORDER

AND NOW, this 23rd day of September, 2003, the order of the Court of Common

that lien. The trial court characterizes it as "irrational and unacceptable" that the Bureau could not do, expressly and intentionally, what it could do inadvertently. The trial court places emphasis on the fact that the Bells had notice of the conditions of the sale, and that they were warned that the rule of *caveat emptor* applies to property sold at real estate tax sales. In effect the trial court would allow the requirements of notice to nullify the mandatory procedure for a judicial sale, the purpose of which is to free the real property of all liens and get the property, it is hoped, back on the tax rolls under new ownership.

Pleas of Berks County dated November 21, 2002, in the above-captioned matter is hereby affirmed in part and reversed in part consistent with the attached opinion.

**14.** 1 Pa.C.S. § 1928 requires strict construction of tax statutes. It is well established that the liability to pay taxes cannot be enforced in a common law proceeding. Taxes can be collected in no way other than that provided by statute. The entire taxing statute, therefore, must be strictly construed and any doubt or uncertainty as to the imposition of the tax must be resolved in favor of the taxpayer. *Commonwealth v. Allied Building Credits*, 385 Pa. 370, 123 A.2d 686 (1956).

**15.** In any case, the issue of a jury trial has been waived under Pa. R.A.P. 302. It was raised, for the first time on appeal to this Court. *Commonwealth v. Piper*, 458 Pa. 307, 328 A.2d 845 (1974).