646 A.2d 751

**In re Consolidated Return of Sale of Properties for Delinquent Taxes by the Westmoreland County Tax Claim Bureau for the Year 1991.**

**Appeal of Rhea YARDLEY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued June 9, 1994.

Decided Aug. 16, 1994.

George A. Conti, Jr., for appellant.

John M. O'Connell, Jr., for appellee.

Before McGINLEY and KELLEY, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

On September 9, 1991, real estate owned by Westmoreland Leasing, Inc. (Leasing) was exposed to public sale by the Westmoreland County Tax Claim Bureau (Bureau) pursuant to the provisions of the Real Estate Tax Sale Law [1] (Tax Sale Law) for unpaid taxes [2] and costs [3] for the upset price of

1. Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101–5860.803.

2. The unpaid taxes were as follows:

| | |
|---|---|
| 1989 County and Township Tax | $ 70.29 |
| 1990 School Tax (with interest) | 195.45 |
| 1991 School Tax | 220.86 |

3. Costs amounted to $90.00.

$560.00.[4]

The Bureau, consistent with Section 5860.607(a), (a.1)(1) of the Tax Sale Law timely filed a consolidated return of the September 9, 1991 tax sale, which included the sale of the property of Leasing, together with its petition for confirmation, in the Court of Common Pleas of Westmoreland County (trial court). The trial court, on October 4, 1991, entered an order confirming nisi the Bureau's consolidated return and the sales so made. The order further provided that absent any objections or exceptions filed to the return of sales within thirty (30) days from October 4, 1991, a decree of absolute confirmation shall be entered, as of course, by the Prothonotary. The Bureau was further ordered within ten (10) days from October 4, 1991 to make publication as provided for in Section 5860.607(b), which it did.

Rhea Yardley (Yardley), on November 4, 1991, timely filed a document labeled "exceptions" to the Bureau's petition for confirmation of the sale of Leasing's real estate whereby she sought "to set aside the sale of the property of Westmoreland Leasing, Inc., ..., to John R. Brajdic, an individual, and to order the funds received in the amount of $576.60 to be applied by the Westmoreland County Tax Claim Bureau to the credit of the *property owner*, Westmoreland Leasing, Inc." (Emphasis added). (R.R. 5a).

In her "exceptions," Yardley alleged that Leasing was the owner of the real estate sold at the September 9, 1991 tax sale by the Bureau (paragraphs 3, 4, 11); that she is the owner of 50% of the capital stock of Leasing (paragraph 2); that Brajdic is the owner of 50% of the capital stock and is also a director and executive officer of Leasing (paragraph 10); that Brajdic did purchase the real estate of Leasing individually at the September 9, 1991 tax sale by the Bureau for the upset price of $526.60 (paragraphs 11, 12, 13). Yardley asserts in paragraph 13 of her "exceptions" that "John R. Brajdic, in

4. The claimed value of the real estate was $15,000.00.

purchasing the subject property at the Tax Sale of September 9, 1991 in his individual capacity did violate his fiduciary duty to Westmoreland Leasing, Inc. and to the other shareholders contrary to the provisions of 15 Pa.C.S.A. § 511 et seq. and 15 Pa.C.S.A. 1711 et seq. as a director and an officer of said corporation." (See Yardley's Exception to petition for confirmation of sale, R.R. 2a–5a).

 The trial court conducted a hearing[5] on the "exceptions" of Yardley on December 18, 1992. The only evidence elicited at the hearing related solely and exclusively to the relationship of Yardley and Brajdic inter se, and to Leasing, and Brajdic being the president and director of Leasing, and Brajdic's conduct of the affairs of Leasing.

Yardley neither in her "exceptions" nor at the hearing before the trial court challenged or presented any evidence relating to the regularity or legality of the Bureau's proceedings in respect to the tax sale of Leasing's real estate.

After hearing, the trial court entered the following order:

And now, this 26th day of January, 1993, the exceptions to the petition for confirmation of the tax sale of the real estate

---

5. We note that at the beginning of the hearing herein, the trial court stated on the record the following:

> I have had an opportunity to meet briefly in Chambers with counsel for both parties and Mr. Kress, who is the solicitor for the Tax Claim Bureau. We have agreed that the Tax Claim Bureau has no stake in the outcome of these proceedings, and accordingly, Mr. Kress will not be participating.

(R.R. 41a).

What the trial court, counsel for Yardley, counsel for Brajdic, and Mr. Kress, counsel for the Bureau, overlooked was that it was the Bureau's report and petition for confirmation being challenged which could only be by way of questioning the regularity and legality of the tax sale by the Bureau. It is the duty of the Bureau under the Tax Sale Law to comply with the procedures set forth by the legislature governing the sale of real estate for nonpayment of returned tax claims; concomitant with that duty, the Bureau is to ascertain whether such objections or exceptions comply with the requisites of Section 5860.607(a), (a.1)(1), (d); if not, it may move to dismiss the objection or exceptions, and, if so, it may enter a defense if it has one. The Bureau has a stake in every challenge to a tax sale conducted by it pursuant to the Tax Sale Law in order to assure the validity of the tax title and maintain the integrity of the legislative procedures required of the Bureau.

designated as Tax Map No. 50–21–12–0–004 filed by Rhea Yardley are dismissed, and the tax sale is confirmed. (R.R. 25a).

■ Yardley, on February 5, 1993, filed a motion for post-trial relief[6] seeking that the trial court "reverse its prior Order and to enter an Order whereby the payment of the sum of $576.60 be receipted by the Westmoreland County Tax Claim Bureau as a payment on behalf of Westmoreland Leasing, Inc. and that the sale of the property to John R. Brajdic be set aside." (R.R. 29a). The trial court, on May 24, 1993, entered an order which stated that "the post-trial motion filed by the exceptant-Yardley is denied." (R.R. 33a).

In her brief to us, under the heading "III Question Presented", the only issue Yardley raises and briefs is "[m]ay the President and director of a corporation purchase corporate property at a tax sale." (Appellant's brief, p. 1). We neither address this issue nor pass on the trial court's determination of whether Brajdic breached a fiduciary duty to Yardley and/or to Leasing.

72 P.S. § 5860.607, states in subsection (a) that the Bureau is to make a consolidated return which shall set forth, *inter alia, the name of the owner* in whose name it was assessed and the *name of the owner* at the time of sale; in subsection (a.1)(1), it is required that within thirty (30) days of the actual

---

**6.** 72 P.S. § 5860.607(d), provides, in part, as follows:

[I]n case any objections or exceptions are filed they shall be disposed of according to the practice of the court....

The procedure herein was that exceptions were filed and the Bureau filed an answer thereto which is according to the practice of court consistent with Pa.R.C.P. 206–209; accordingly the proceedings were not subject to post-trial relief practice. See Note to Pa.R.C.P. Rule 227.1(c) (A motion for post-trial relief may not be filed to matters governed exclusively by the rules of petition practice).

The fact that Yardley filed a post-trial relief motion, which the record reveals was not requested by the trial court, did not extend the time for Yardley to appeal the January 26, 1993 order dismissing her exceptions and confirming the tax sale and her appeal here on June 23, 1993 was untimely. See *Appeal of Borough of Churchill*, 525 Pa. 80, 575 A.2d 550 (1990). Because of the importance of the other issues raised herein *sua sponte*, we do not choose to dispose of Yardley's appeal for untimeliness.

sale *notice shall be given to each owner* that the property was sold and *the owner may file objections or exceptions* with the court *relating to the regularity and procedures followed during the sale;* in subsection (b), the Bureau, within ten (10) days after confirmation nisi shall publish as therein provided, notice that, *inter alia,* (1) a consolidated return has been presented to the court, and (3) *any owner* or *lien creditor* may file objections or exceptions thereto; in subsection (d), it is stated that any objections or exceptions to *such sale* may question the *regularity or legality of the proceedings of the Bureau in respect to such sale.* (Emphasis added).

It admits of no argument that the legislature clearly and without equivocation has provided, (1) that only *owners* of real estate subject to a tax sale by the Bureau are to be given all notices required under the Tax Sale Law, (2) that only an owner or a lien creditor may file objections or exceptions to the return of the Bureau and confirmation nisi by the trial court, and (3) that the objections or exceptions may only relate to the regularity or legality of the procedures followed by the Bureau in respect to the sale of the subject property.

■ To have a justiciable case, there must be, inter alia, a viable party [7] seeking relief and the court must have subject matter jurisdiction; where either one or both are absent the court is without authority to adjudicate the matter and the court may sua sponte raise either or both of the foregoing. In *Vespaziani v. Department of Revenue,* 40 Pa.Commonwealth Ct. 54, 396 A.2d 489 (1979), citing *Kaelin v. University of Pittsburgh,* 421 Pa. 220, 218 A.2d 798 (1966), we held that the test of jurisdiction of subject matter of litigation is whether the court has the power to enter upon the inquiry.

■ The legislature has the authority to determine what persons or group of persons are authorized to commence a particular matter; likewise, the legislature has the authority

7. Section 102 of the Judicial Code, 42 Pa.C.S. § 102, defines "party," in relevant part, as:

A person who commences or against whom relief is sought in a matter....

to limit the issues, i.e., the court's inquiry, into a particular matter.

The legislature in the Tax Sale Law specifically limited challenges to tax sales by the Bureau to owners or lien creditors of the real estate, and then limited them only to filing objections or exceptions to the "regularity or legality of the proceedings of the bureau in respect to such sale." 72 P.S. § 5860.607(d).

The limitation on the power of the court to act in a tax sale case is demonstrated by the case of *Povlow v. Brown*, 12 Pa.Commonwealth Ct. 303, 315 A.2d 375 (1973). In *Povlow*, the trial court, in an action in equity, cancelled a tax sale deed because of the inadequacy of the price. Brown's property having a value of $13,500, was sold by the Bureau at a tax sale for the upset price of $744.19. Brown's equity action was brought eight months after the tax sale. Brown conceded that the Bureau fully complied with the requirements of the Tax Sale Law. In reversing the trial court, we held:

> The court below "cancelled" the deed to Povlow solely on the ground of the inadequacy of price. This was a compassionate act, pleasant to perform. It was not, however, within the court's power. The dominant purposes of the Real Estate Tax Sale Law were to provide speedier and more efficient procedures for enforcing tax liens and to improve the quality of titles obtained at a tax sale. The assumption by the court of the power to set aside a sale such as this made after full compliance with the ample notice requirements of the statutes and after confirmation absolute by the court would wholly defeat these purposes; more importantly, for present purposes, it is action in direct contradiction of the Legislature's declaration that there shall be no redemption after a sale confirmed absolutely. (Footnotes omitted.)

*Povlow v. Brown*, 12 Pa.Commonwealth Ct. at 306, 315 A.2d at 377.

Having determined that we have the power to *sua sponte* raise the propriety of a person being a party to a lawsuit and

that we have the power to *sua sponte* raise our authority to act in a particular matter notwithstanding the fact that we may have general jurisdiction in that area, we now address Yardley as a party herein, and also our authority to hear those matters she labels as "exceptions."

Yardley, in the document she labels "exceptions," alleges that she is a 50% shareholder of Leasing and that Leasing was the owner of the property subject to the tax sale. It requires no citation that corporations can and do buy, sell, and hold real estate as a corporate entity separate and apart from its shareholders. The fact that Yardley held 50% of the stock in Leasing did not constitute her an owner of Leasing's real estate either under the Tax Sale Law or the Business Corporation Law.[8]

The legislature designated that only owners or lien creditors may file objections or exceptions to the return of the Bureau and confirmation nisi by the trial court of the tax sale. Yardley, by her own admission, was not an owner, nor did she claim she was a lien creditor of the property assessed in the name of Leasing and sold at the tax sale. Having failed to establish that she was a member of the group or class entitled to file objections or exceptions to a tax sale pursuant to the Tax Sale Law, she is not a proper party to this action thus requiring the dismissal of her exceptions.

Additionally, the legislature specifically states that any objections or exceptions to such a sale may question the regularity or legality of the proceedings of the Bureau in respect to the sale of the property being challenged.[9] The foregoing language clearly and unequivocally limits the objections or exceptions of an owner or a lien creditor to whether the Bureau complied with the procedures delineated by the legislature to bring a delinquent tax property to a public sale and the return and confirmation thereof. It is only the

8. 15 Pa.C.S. §§ 1101–1110.

9. Section 5860.607(d) also provides that any objection or exception may not raise the legality of the taxes on which the sale was held, of the return by the tax collector, or of the claim entered.

regularity or legality of the Bureau's processes as measured against the requisites delineated by the legislature which may be challenged by an owner or a lien creditor.

There is no provision in the Tax Sale Law which requires the Bureau in processing a returned tax claim against a corporation to determine at a public sale thereof the relationship, if any, of the successful bidder to the corporation or to inquire and/or determine if the corporate affairs were conducted consistent with the Business Corporation Law.

■ Since the legislature in the Tax Sale Law limited the objections or exceptions which may be filed by an owner, the courts are limited in their review to the same limitation, i.e., the courts only have the power or authority to consider objections or exceptions limited to the "regularity or legality of the proceedings of the bureau in respect to such sale." Yardley raised no such exceptions; accordingly, dismissal of her "exceptions" is required.

■ By reason of the foregoing, Yardley was neither a party to the within proceedings, which is clear on the face of her exceptions, nor did she raise any objections or exceptions to the regularity or legality of the proceedings of the Bureau in respect to such sale. Yardley's only challenge, which also appears on the face of her "exceptions," was Brajdic's alleged breach of a fiduciary duty, which is not an objection or exception which the trial court had the power to inquire into in a challenge to a sale of corporate real estate conducted pursuant to the Tax Sale Law.

Notwithstanding the trial court's lack of power to inquire into the exceptions raised by Yardley, it nonetheless conducted a full hearing which was devoted exclusively to Brajdic's relationship to Leasing and his conduct of the corporate affairs of Leasing as president and director, all of which was not within the power of the trial court in the proceeding herein. The trial court then prolonged this proceeding by permitting and deciding a post-trial relief motion by Yardley after the dismissal of her exceptions by order of January 26, 1993.

The trial court arrived at the correct result, which, ordinarily, we would affirm. However, if we affirmed the May 24, 1993 order, which is the order appealed from by Yardley, we would not only be approving the trial court's allowing and disposing of Yardley's motion for post-trial relief, which we do not approve of, we would also be approving a non-owner of real estate as being a party objector or exceptant to a tax sale by the Bureau contrary to the legislative directives; additionally, we would, again, contrary to legislative directives, extend the power and authority of the courts to hear objections or exceptions other than those limited by the legislature to "the regularity or legality of the proceedings of the bureau in respect to such sale." For the foregoing reasons, and for the fact that the exceptions of Yardley on the face thereof demonstrate she was neither the owner of the real estate sold at the September 9, 1991 tax sale which was purchased by Brajdic, nor does she on the face thereof set forth any exceptions to the regularity or legality of the proceedings of the Bureau, rather than affirm the trial court, we will vacate the order of the trial court and remand this matter with directions to dismiss the exceptions of Yardley and confirm the tax sale *as of the date of* November 14, 1991.[10]

## ORDER

AND NOW, this 16th day of August, 1994, the orders of the Court of Common Pleas of Westmoreland County dated May 24, 1993 and January 26, 1993 are vacated and the matter is remanded to the trial court with directions to dismiss the exceptions of Rhea Yardley and confirm the tax sale *as of the date of* November 14, 1991.

Jurisdiction relinquished.

**10.** We note that the trial court, in its opinion dated January 26, 1993, specifically concluded that the evidence failed to establish that Brajdic breached his fiduciary duty to Leasing. However, because the trial court lacked the authority to make such a determination, as set forth hereinabove, we neither consider said conclusion of the trial court, nor do we directly address said issue.