# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pan Diners, Inc.                    :

                               :    No. 453 C.D. 2024

               v.                      :

                                 :    Argued: April 8, 2025

Monroe County Tax Claim Bureau    :

and Puja Pandya                       :

                                 :

Appeal of: Puja Pandya            :

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE LORI A. DUMAS, Judge

**OPINION BY**
**JUDGE DUMAS**                                    **FILED: May 8, 2025**

      Puja Pandya (Appellant) appeals from the order issued by the Court of

Common Pleas of Monroe County (trial court) on March 18, 2024, which granted a

petition to set aside an upset tax sale of property owned by Pan Diners, Inc. (Pan

Diners). After careful review, we conclude that the Monroe County Tax Claim

Bureau (Bureau) properly included tax liens documented by the Department of

Revenue in its calculation of the upset sale price of this property, as required by

Section 602(h) and Section 605 of the Real Estate Tax Sale Law (RETSL).[1] We

further conclude that the trial court erred when it questioned the accuracy of these

tax liens, as such questions are beyond the scope of objections or exceptions to an

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803. RETSL's section numbers are distinct from "the sections provided in Purdon's Pennsylvania Statutes, which is an unofficial codification of Pennsylvania law." *Herold v. Univ. of Pittsburgh*, 329 A.3d 1159, 1166 n.1 (Pa. 2025). For clarity, we may refer to provisions of RETSL "only by their Purdon's citation." *Id.*

upset tax sale, as provided by Section 607(d) of RETSL. Finally, we discount any apparent discrepancy between the approximate upset price and the actual upset price at the time of the sale and reject the trial court's concern that the actual upset price was improperly inflated. Accordingly, we are constrained to reverse.

## I. BACKGROUND[2]

Since the 1960s, Pioneer Diner has operated on property located at 508 Pocono Boulevard, Mt. Pocono, Pennsylvania 18344, which is identified as county parcel # 10.6.1.32 (Property). However, in April 1978, Pan Diners acquired title to the Property. Constantine Korovesis, an officer of Pan Diners, has also operated the Pioneer Diner since the 1970's.

Pan Diners became delinquent on its 2021 real estate taxes, so in April 2022, the Bureau sent a notice of return of claim by certified mail, informing Pan Diners that $8,575.04 was due. An agent of Pan Diners received the notice, but the taxes remained unpaid. On May 10, 2023, the Bureau issued a written notice of public tax sale, stating that the 2021 taxes were still delinquent and the amount due had increased to $9,534.75. This notice, which set the sale for September 11, 2023, at 9:00 a.m., was mailed to and received by an agent of Pan Diners. The Bureau posted notice of the sale on the Property on June 13, 2023, and published notice in three sources: the *Pocono Record* on August 11, 2023, the *Journal of Pocono Plateau* in mid-August 2023, and the *Monroe Legal Reporter* on August 11, 2023. These newspaper advertisements listed the upset price as $15,549.27. *See* Joint Ex. 1 at 2-11.

On August 2, 2023, the Bureau's Deputy Director emailed the Pennsylvania Department of Revenue (Department), requesting notice of

---

[2] Unless otherwise stated, we adopt the factual background for this case from the trial court's opinion, which is supported by substantial evidence of record. *See* Trial Ct. Op., 3/18/24.

Commonwealth tax liens against properties listed for sale. The Department responded on August 8, 2023, "enclosing statements for 2 corporations which [the Department] [has] claims against," identifying the parcel number for the Property on a proof of claim form, and listing three liens for unpaid sales tax of $15,588.06, $13,414.69, and $39,832.33. *See* Joint Ex. 1 at 12-13 ("Priority Claim for Cnty. Sale," 8/8/23) (Dep't's Proof of Claim). These liens identify the Property's parcel number.[3] Accordingly, the Bureau added these liens to Pan Diners' upset price, increasing it to $84,268.85.

On September 11, 2023, the Property was sold at the tax sale to Appellant.[4] Pan Diners subsequently filed exceptions and petitioned the trial court to set aside the tax sale. Following a hearing, the court rejected Pan Diners' claim that the Bureau had not complied with RETSL's notice provisions but credited Pan Diners' objection that the upset price at the time of sale was improperly inflated because the liens identified by the Department were "erroneous." Trial Ct. Op. at 4. The trial court reasoned that this inflated upset price could have deterred public interest in the sale, misled Pan Diners about the amount needed to redeem the property, and hindered Pan Diners' ability to raise funds. *See id.* at 9. Accordingly, the trial court set aside the sale.

Appellant timely appealed to this Court and filed a court-ordered Pa.R.A.P. 1925(b) statement.[5] The trial court issued no further opinion in this matter.

---

[3] The trial court credited documentary evidence identifying the delinquent taxpayer as Pioneer Diner. *See* Pet'r's Exs. 6, 7, 8. Nevertheless, to be clear, the proof of claim form provided by the Department identifies the defendant as "Pan Diners Inc c/o Pioneer Diners Inc" and establishes that these liens encumber the Property. *See* Dep't's Proof of Claim (capitalization omitted).

[4] Ultimately, Appellant purchased the Property for $195,362.89.

[5] The Bureau did not appeal.

3

## II. ISSUE

Essentially, Appellant presents one issue for our review. Appellant asserts that the trial court erred as a matter of law by disregarding Section 602(h) of RETSL, which requires a tax claim bureau to include in the upset sale price of property those amounts set forth on a proof of claim submitted by the Department. Appellant's Br. at 2.[6]

## III. DISCUSSION[7]

### A. Arguments

Appellant maintains that the Bureau strictly complied with RETSL's notice requirements, and in particular Section 602(h).[8] *See* Appellant's Br. at 6.

---

[6] Appellant preserved a second issue, asserting a lack of substantial evidence to support the trial court's conclusion that the upset sale price was improperly inflated. *See id.* In light of our decision, we need not reach this factual issue.

[7] In tax sale cases, our review is limited to determining whether the trial court abused its discretion, erred as a matter of law, or rendered a decision not supported by substantial evidence. *In re Balaji Invs., LLC*, 148 A.3d 507, 509 n.2 (Pa. Cmwlth. 2016). The trial court has the exclusive province to weigh evidence, make credibility determinations, and to draw reasonable inferences from the evidence presented. *Smith v. Tax Claim Bureau of Pike Cnty.*, 834 A.2d 1247, 1251 (Pa. Cmwlth. 2003). Where the trial court's findings are supported by substantial evidence of record, this Court may not disturb those findings on appeal. *Id.*

[8] Section 602(h) sets forth the process whereby a bureau notifies the Department of a scheduled sale of property owned by a corporation and then includes in the upset sale price those Commonwealth taxes set forth on the Department's responsive proof of claim. It provides:

> In case the property of any corporation . . . is advertised for sale, the bureau shall give to the [Department], at least thirty (30) days prior to the date of the scheduled sale, notice of the sale by certified mail on a form provided by the [Department] which shall set forth (1) the name and address of the bureau, (2) the date of the sale, (3) the name and address of each corporation . . . whose property is scheduled for sale and (4) the total number of corporations . . . whose properties are scheduled for sale. Upon receipt of the notice and at least seven (7) days before the date of the sale listed on the notice, the [Department] shall mail to the bureau, by certified mail, a proof of claim for payment of Commonwealth taxes which are accorded priority by section 1401 of the act of April 9, 1929 (P.L. 343, No.176), known as the "Fiscal Code." The bureau shall include in the upset sale price of

According to Appellant, the Bureau was required to include all tax liens identified by the Commonwealth and lacks authority "to review, analyze, or reject proofs of claim . . . ." *Id.* at 7 (citing Sections 602(h) and 605 of RETSL).

Additionally, Appellant challenges the trial court's reliance on *Wilkes-Barre v. Luzerne County Tax Claim Bureau*, 4 Pa. D.&C.2d 399 (Pa. Ct. Com. Pl. Luzerne Cnty. 1955), in which the trial court set aside an upset tax sale because the local tax bureau, through a clerical error, had fixed the upset sale price too low to satisfy the delinquent taxes, a violation of Section 605 of RETSL.[9] *See id.* at 9-11. Here, Appellant stresses, in relevant part, that the Bureau "properly included tax liens of the Commonwealth and outstanding real property taxes, just as Section 605 requires." *Id.* at 10-11.[10]

---

each said property the amount of Commonwealth taxes set forth on the proof of claim received from the [Department]. If the bureau complies with the notice provisions of this section and the [Department] fails to mail to the bureau, at least seven (7) days before the date of sale listed on said notice by verification by the postmark, by certified mail, the proof of claim required by this section, the lien upon said property shall be forever discharged and divested, notwithstanding any other provision of this act or other law to the contrary. . . .

72 P.S. § 5860.602(h).

[9] Although the Court is not bound by decisions of a court of common pleas, such decisions may be considered for their persuasive value. *Twp. of Washington v. Twp. of Upper Burrell*, 184 A.3d 1083, 1091 n.6 (Pa. Cmwlth. 2018).

[10] In relevant part, Section 605 provides:

Upset Sale Price.—The bureau shall fix as the upset price to be realized at the sale of any property upon a claim absolute, the sum of (a) the tax liens of the Commonwealth, (b) the amount of the claim absolute and interest thereon on which the sale is being held, (c) the amount of any other tax claim or tax judgment on such property and interest on the judgment to the date of sale, (d) the amount of all accrued taxes including taxes levied for the current year, whether or not returned, a record of which shall be furnished by the bureau by tax collectors, receivers of taxes and taxing districts, (e) the amount of the municipal claims against the property, and (f) the record costs and costs of sale, including pro rata costs of the publication

5

In response, Pan Diners argues that the Bureau failed to accurately fix the upset sale price. Appellee's Br. at 6 (citing Section 605 of RETSL). In its view, the Bureau violated Section 605 by including Commonwealth tax liens "incurred by a separate and distinct entity . . . with no ownership interest in the Property." *Id.* at 6-7. According to Pan Diners, the Bureau's failure to strictly comply with Section 605 supports the trial court's decision to set aside the upset tax sale. *See id.* at 7-9.

In further support, Pan Diners echoes the trial court's reliance on *Wilkes-Barre*. *See id.* at 10-11. According to Pan Diners, any failure to accurately fix the upset sale price is fatal, whether the upset price is too low or too high. Just as a low price "undermines the integrity of the upset sale," Pan Diners reasons, "a too-high price creates an undue burden on the property owner." *Id.* at 10. In either scenario, Pan Diners concludes, the upset tax sale is compromised and should be invalidated. *See id.* at 10-11.

## B. Analysis

When a property owner becomes delinquent in paying real estate taxes, a taxing bureau may conduct an upset tax sale of the property to recover the "upset price," which is the sum of all accrued taxes, tax liens, municipal claims, and statutory costs associated with the property. *In re Balaji Invs., LLC*, 148 A.3d 507, 510 (Pa. Cmwlth. 2016) (*In re Balaji*); *In re Adams Cnty. Tax Claim Bureau*, 200 A.3d 622, 623 n.1 (Pa. Cmwlth. 2018) (stating that the upset price is the "total sum of taxes owed plus any tax liens and municipal claims"); 72 P.S. § 5860.605. The

---

of notice and costs of mail and posted notices in connection with the return of the claim and mail and posted notices of sale.

. . .

No sale of property shall be made by the bureau unless a bid equal to the upset price is made.

72 P.S. § 5860.605.

purpose of an upset sale is to satisfy the delinquent tax obligation and bring the property current on its taxes, not to penalize property owners or facilitate real estate investments. *See In re Bajali*, 148 A.3d at 514; *Bell v. Berks Cnty. Tax Claim Bureau*, 832 A.2d 587, 592 (Pa. Cmwlth. 2003); *Sampson v. Tax Claim Bureau of Chester Cnty.*, 151 A.3d 1163, 1167 (Pa. Cmwlth. 2016).

"Due process is implicated in any taking of property for the collection of taxes." *Sampson*, 151 A.3d at 1167; *see In re Sale of Tax Delinquent Prop. on October 19, 2020*, 308 A.3d 890, 899 (Pa. Cmwlth. 2024) (*Delinquent Prop.*) (recognizing the right to enjoy one's property free of governmental interference). Accordingly, a taxing bureau must comply with RETSL's statutory requirements. *See, e.g.*, *Delinquent Prop.*, 308 A.3d at 899-900 (affirming a common pleas' decision to set aside an upset tax sale where the taxing bureau had not published notice of the sale in accordance with Section 602(a)[11]); *Sampson*, 151 A.3d at 1171-72 (reversing a common pleas' decision, which had denied a petition to set aside a sale, where the taxing bureau had not offered property owners an installment plan as required by Section 603[12]); *Area Homes, Inc. v. Harbucks, Inc.*, 461 A.2d 357, 358

---

[11] Section 602(a) provides:

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

72 P.S. § 5860.602(a)

[12] Section 603 requires a taxing bureau to offer delinquent taxpayers an installment plan when the delinquent taxpayers tender 25% of their outstanding property taxes. *In re Consol. Return of the Tax Claim Bureau of the Cnty. of Beaver from the August 16, 2011 Upset Sale for Delinquent Taxes*, 105 A.3d 76, 82 (Pa. Cmwlth. 2014) (construing Section 603 of RETSL), *pet. for allowance of appeal denied*, 121 A.3d 497 (Pa. 2015); 72 P.S. § 5860.603.

7

(Pa. Cmwlth 1983) (affirming a common pleas' decision to set aside the tax sale of property owned by a corporation because the taxing bureau had failed to notify the Department of the sale as required by Section 602(h)).

Per Section 602(h) of RETSL, a taxing bureau must notify the Department at least 30 days prior to the scheduled date of an upset tax sale of property owned by a corporation. 72 P.S. § 5860.602(h). Upon receipt of this notice, the Department must respond and provide, no later than 7 days before the date of the sale, "a proof of claim for the payment of Commonwealth taxes . . . ." *Id.*

Dovetailing with these notification requirements that a taxing bureau timely notify the Department of a scheduled sale of corporate-owned property and that the Department timely respond with a proof of claim for the payment of Commonwealth taxes, both Section 602(h) and Section 605 further and expressly require a bureau to include these Commonwealth taxes in the upset sale price. *See id.* ("The bureau shall include in the upset sale price of . . . said property the amount of Commonwealth taxes set forth on the proof of claim . . . ."); *Id.* at § 5860.605 ("The bureau shall fix as the upset price to be realized at the sale of any property upon a claim absolute, the sum of (a) the tax liens of the Commonwealth . . . .").

There can be no dispute in this case that the Bureau promptly and strictly complied with these provisions. The Bureau scheduled the upset tax sale of the Property for September 11, 2023. *See, e.g.*, Joint Ex. 1 at 7 (Monroe Cnty. Legal Rep., 8/11/23). More than 30 days prior to the scheduled sale, on August 2, 2023, the Bureau informed the Department of the scheduled sale. *See* Dep't's Proof of Claim. On August 8, 2023, the Department timely responded with a proof of claim, documenting three liens on the Property for unpaid Commonwealth taxes. *See id.* Finally, the Bureau included these liens in the upset sale price as required. Notes of

8

Testimony (N.T.) Hr'g, 1/30/24, at 6-7, 17. In sum, we discern no irregularity in the proceedings of the Bureau with respect to the upset sale of the Property.

Nevertheless, the trial court set aside the sale based on its conclusion that the Bureau had "improperly increased" the upset sale price. Trial Ct. Op. at 9. The trial court explained that "this substantial increase was due to another corporation's tax obligations and was not authorized by . . . RETSL because they were not liens on [the Property]." *Id.*

In this regard, respectfully, we must disagree. First, the trial court erred in suggesting that the Department's proof of claim did not identify liens on the Property. The Bureau initiated proceedings against property owned by Pan Diners with county parcel # 10.6.1.32. *See, e.g.*, Joint Ex. 1 at 19 (Bureau Notice of Sale, 5/10/23); N.T. Hr'g at 5. The Department's proof of claim asserts that "[t]ax liens were filed with the Prothonotary of Monroe County" against "county parcel number 10.6.1.32." Dep't's Proof of Claim (capitalization removed). Thus, clearly, the Department identified Commonwealth tax liens against the Property, and the Bureau was therefore required to include them in the upset sale price. *In re Balaji*, 148 A.3d at 510; 72 P.S. §§ 5860.602(h), 5860.605.

Second, and more importantly, the trial court failed to confine its review of the Bureau's proceedings to the limitations set forth in Section 607(d) of RETSL. That section provides that objections or exceptions to a tax sale may challenge the "regularity or legality of the proceedings of the bureau in respect to such sale, but may not raise the legality of the taxes on which the sale was held, or the return by the tax collector to the bureau, or of the claim entered." 72 P.S. §5860.607(d).

This Court has drawn a clear distinction between procedures challenging tax claims from those governing tax sales. For example, in *Zelno v.*

*Lyons*, 245 A.3d 1185 (Pa. Cmwlth. 2021), a property owner was delinquent on her real estate taxes. The taxing bureau endeavored to serve notice of the claim by certified mail but was unsuccessful. *Id.* at 1186. When that occurs, a bureau is required to post the property affected. *Id.* (citing 72 P.S. § 5860.308). The bureau did not adhere to this requirement but nonetheless proceeded to schedule an upset tax sale. *Id.* The bureau then followed all relevant procedures, and the sale occurred. *Id.* The property owner filed a petition to set aside the sale, asserting lack of notice of the underlying tax claim. *Id.* The trial court denied the petition, and this Court affirmed.

In particular, the *Zelno* Court observed that Section 314(e)[13] provided the "*exclusive* procedure for challenging the failure of notice of tax claims . . . ." *Id.* (emphasis in original). On the other hand, Section 607(d) permitted owners of real estate to challenge tax sales only with respect to the "regularity or legality of the proceedings of the bureau." *Id.* at 1187. Thus, the Court rejected the property owner's attempt to conflate these distinct procedures and "upend an otherwise valid tax sale . . . ." *Id.* at 1188.

In another case, *Appeal of Yardley*, 646 A.2d 751 (Pa. Cmwlth 1994), the taxing bureau sold property owned by a corporation for unpaid taxes. One of the corporation's stockholders, Yardley, filed exceptions alleging that another stockholder (and corporate officer) had violated his fiduciary duty to the corporation when he purchased the property in his individual capacity. *Id.* at 753. Following a

---

[13] Section 314(e) provides:

No taxpayer shall have the right to proceed by petition to the court of common pleas to open a claim absolute under the provisions of this act, except on the ground of payment of the tax involved or failure to receive notice. The remedy provided by this section to contest a tax claim entered shall be deemed to be exclusive except as herein otherwise provided.

72 P.S. § 5860.314(e).

10

hearing, at which there was no evidence presented challenging the regularity or legality of the bureau's proceedings, the trial court dismissed the exceptions and confirmed the tax sale. *Id.* at 753-54.

Upon review, this Court vacated the trial court's decision. First, noting that she was neither an owner of the property nor a lien creditor, the Court concluded that Yardley was not authorized to file objections or exceptions to the sale and, therefore, was not a viable party. *Id.* at 754 (citing Section 607(b) of RETSL[14]). Additionally, the trial court had erred in considering Yardley's "exceptions." *Id.* at 756. Referencing the limitations imposed by Section 607(d), the Court further observed that an alleged breach of a fiduciary duty "is not an objection or exception which the trial court had the power to inquire into in a challenge to a sale of corporate real estate conducted pursuant to RETSL." *Id.* Thus, even though the trial court had arrived at the correct result, the *Yardley* Court cautioned against "extend[ing] the power and authority of the courts to hear objections or exceptions other than those [authorized] by the legislature . . . ." *Id.* Accordingly, the Court vacated the trial court's decision and remanded with instructions that it dismiss Yardley's exceptions and confirm the tax sale. *Id.*

---

[14] Section 607(b) provides:

> (b) The bureau shall, at the expense of the county, within ten (10) days after confirmation nisi of the consolidated return, publish a general notice once in a newspaper of general circulation published in the county, and in the legal journal, if any, designated by rules of court for the publication of legal notices, stating (1) that the consolidated return of the bureau with respect to any such sale for taxes has been presented to the court, (2) giving the date of confirmation nisi and (3) that objections or exceptions thereto may be filed by any owner or lien creditor within thirty (30) days after the court has made a confirmation nisi of the consolidated return or that the return will be confirmed absolutely.

72 P.S. § 5860.607(b).

While neither *Zelno* nor *Yardley* are directly on point, in that neither case considered an exception or objection challenging the validity of a Commonwealth tax lien, these cases are informative and demonstrate that the scope of appropriate inquiry is limited. In *Zelno*, this Court rejected a property owner's attempt to set aside a tax sale due to issues with the underlying tax claims. 245 A.3d at 1188. In *Yardley*, this Court made clear that a trial court commits reversible error when it deviates from the terms of Section 607(d) to consider issues beyond the regularity or legality of a bureau's tax sale proceedings. 646 A.2d at 756. Here, we are constrained to conclude that the trial court erred when it considered Pan Diners' assertions that the upset price at the time of sale was improperly inflated due to allegedly erroneous Department liens. *Zelno*; *Yardley*; 67 P.S. § 5860.607(d).

Finally, the trial court's reliance on *Wilkes-Barre* was misplaced. In that case, the taxing bureau erroneously calculated the upset price to be less than the amount of all accrued taxes and costs. 4 Pa. D.&C.2d at 400. Nevertheless, the sale proceeded. *Id.* Approximately two weeks later, the bureau informed the successful bidder and advised him that he would be permitted to submit a supplemental bid sufficient to meet the actual upset price, but the bidder declined. *Id.* at 401. The City of Wilkes-Barre and the local school district filed objections and petitioned to set aside the sale, alleging the sale was prohibited by the express language of Section 605. *Id.* at 402 (quoting from Section 605 that "no sale of property shall be made by the bureau unless a bid equal to the upset price is made"). The *Wilkes-Barre* trial court agreed, observing that a clerical error resulted in a sale price that was "clearly inadequate," and set aside the sale.[15] *Id.*

---

[15] The trial court's conclusion that the upset price was "clearly inadequate" should not be confused with those cases in which a property owner has challenged the sale price as inadequate

Acknowledging a lack of appellate authority to support Pan Diners' petition, the trial court extrapolated from *Wilkes-Barre* that just as an erroneously low upset price invalidated a sale, an artificially high upset price should have the same effect.[16] *See* Trial Ct. Op., at 9. In support of this conclusion, the trial court reasoned that the substantial increase in the upset price "could have had a chilling effect on the public's interest in the property, the owner's understanding of what was necessary to remove the property from the sale[,] and the owner's ability to raise the funds necessary to do so." *Id.*

We do not share the trial court's apparent concern that the actual upset price may have surprised Pan Diners or hindered its ability to gather sufficient funds prior to the upset sale. Certainly, the statutory requirements of RETSL do not preclude an increase in the calculated upset price between the initial notice to a taxpayer and the scheduled date of the sale.[17] Rather, in our view, the salient point recognized by the *Wilkes-Barre* trial court is that the purpose of an upset tax sale is "to realize a price sufficient to bring the tax obligation on the property fully current."

---

when compared to the appraised value of the property. *See, e.g.*, *Gaynor v. Delaware Cnty. Tax Claim Bureau*, 330 A.3d 546, 549 (Pa. Cmwlth. 2025) (rejecting a claim that sale price was grossly inadequate, where property was sold for the full upset price and there were no apparent irregularities in the sale), *but see, e.g.*, *Allegheny Cnty. v. Golf Resort, Inc.*, 974 A.2d 1242, 1247-48 (Pa. Cmwlth. 2009) (finding that inadequate price may be a basis to set aside a tax sale where irregularities in the sale contribute to the inadequate price).

[16] We reiterate that we discern no error in the upset price set by the Bureau, which calculated the actual upset price in accordance with Sections 602(h) and 605.

[17] *Compare, e.g.*, Section 602(a), which requires notice of the "approximate upset price" 30 days prior to the upset sale, 72 P.S. § 5860.602(a), *with* Section 602(h), which requires the Department to provide its proof of claim seven days prior. *Id.*, § 5860.602(h). Indeed, there should be an expectation that the actual upset price will be greater than the approximate price first conveyed to the taxpayer. Similarly, interest and costs will continue to accrue and lead to an increase in the actual upset price.

13

*In re Bajali*, 148 A.3d at 514; *Bell*, 832 A.2d at 592 (same); *Wilkes-Barre*, 4 Pa. D.&C.2d at 402; 72 P.S. § 5860.605.

## IV. CONCLUSION

In this case, the Bureau complied with the statutory requirements of RETSL. In particular, the Bureau timely notified the Department that the Property was scheduled for an upset tax sale and, upon the Department's timely response, calculated the upset sale price to include those Commonwealth tax liens documented in the Department's proof of claim. 72 P.S. §§ 5860.602, 5860.605. Additionally, the trial court erred when it considered Pan Diners' challenge to the validity or accuracy of the Commonwealth's tax liens, where such exceptions or objections are beyond the scope of Section 607(d) and the court must confine its inquiry to the regularity or legality of a bureau's tax sale proceedings. *Zelno*; *Yardley*; 67 P.S. § 5860.607(d). Accordingly, we reverse the trial court's decision to set aside the tax sale.

_____
**LORI A. DUMAS, Judge**

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pan Diners, Inc.                  :
                                    :    No. 453 C.D. 2024

             v.                  :
                                      :

Monroe County Tax Claim Bureau    :
and Puja Pandya                     :
                                      :

Appeal of:  Puja Pandya           :

# **O R D E R**

AND NOW, this 8th day of May, 2025, the order entered by the Court of Common Pleas of Monroe County (trial court) on March 18, 2024, is REVERSED.

                                      _____

                                      **LORI A. DUMAS, Judge**