# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Krolick,                          :
                Appellant        :
        v.                               :     No.  272 C.D. 2024
                               :
Schuylkill County Tax Claim Bureau        :     Argued:  September 10, 2025

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
          HONORABLE PATRICIA A. McCULLOUGH, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE LORI A. DUMAS, Judge
          HONORABLE STACY WALLACE, Judge
          HONORABLE MATTHEW S. WOLF, Judge

## OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE WOLF                                    FILED:  April 16, 2026

Stephen Krolick (Krolick) appeals from an order of the Court of Common Pleas of Schuylkill County (trial court), dated February 15, 2024, which dismissed Krolick's objection to an upset tax sale of his property.  The trial court concluded that the Schuylkill County Tax Claim Bureau (Bureau) was authorized to sell the property under the Real Estate Tax Sale Law (RETSL),[1] despite that Krolick attempted to pay the taxes prior to the sale.  We conclude that Krolick's offer of payment prohibited the sale under RETSL.  Accordingly, we reverse.

Krolick owns and resides at 141 Roosevelt Drive, Mahanoy City, Pennsylvania (Property) in Schuylkill County.  The Property was listed and sold at

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

the Schuylkill County Upset Tax Sale held September 18, 2023, for $1,069.88 in delinquent taxes. Krolick filed timely objections to the sale. The trial court held an evidentiary hearing on January 8, 2024.

At the hearing, the parties[2] stipulated that the Bureau had fully complied with RETSL's notice requirements. Notes of Testimony, Jan. 8, 2024 (N.T.) at 9-11. Krolick challenged only the Bureau's alleged refusal to accept payment of the delinquent taxes, or alternatively to offer a payment plan upon partial payment. *Id.* at 3-4; Original Record, Item No. 1 (Objections to Upset Sale, filed Oct. 19, 2023) ¶¶ 9-14. The Bureau presented the fact testimony of Russell Motsko, an employee of the Bureau. N.T. at 11-12. He testified that, for about 15 years, the Bureau has had a "policy" of accepting payment of delinquent taxes until 4:30 p.m. on the last business day before a scheduled tax sale. *Id.* at 14-15. If any payment is offered thereafter (whether in person at the Bureau's office, by mail, or online by credit card) the Bureau refuses the payment. *Id.* at 16. Motsko opined that accepting payment on the day of the sale would cause "sheer bedlam" because there is no easy way to communicate between the Bureau's office and the courtroom where the sale is being held. *Id.* at 15, 17. Motsko was present at the sale in Courtroom No. 1 of the Schuylkill County Courthouse and had no knowledge of whether Krolick appeared at the Bureau's office to make payment. *Id.* at 22, 24. The Bureau's office is located in the basement of the same courthouse. *Id.* at 24.

Krolick testified that he arrived at the Bureau's office at 8:15 or 8:16 a.m. on the Monday morning of the scheduled sale. N.T. at 43-44. He had cash sufficient to pay all of the taxes, but the Bureau refused payment. *Id.* On cross-examination, Krolick stated he was aware of the Bureau's policy that he pay before

[2] Krolick and the Bureau appeared at the hearing, both represented by counsel. The successful bidder at the tax sale did not appear. Notes of Testimony, Jan. 8, 2024 (N.T.) at 6.

2

4:30 p.m. the preceding Friday. *Id.* at 44. He explained, however, that he was unable to obtain money to pay the taxes until Monday morning, which he did by asking a friend, Bruce Pascavage, to come with him to the courthouse and loan him the money. *Id.* at 45, 51, 53. Krolick indicated that the Bureau employee to whom he offered payment at 8:15 a.m. on the day of the sale was present at the trial court hearing. *Id.* at 49.

Krolick also presented Pascavage's testimony. N.T. at 51. Pascavage, a childhood friend of Krolick's, went to the courthouse with Krolick on the morning of the sale to loan him money to save his home. *Id.* at 52. Pascavage had $5,000 in cash with him and would have lent Krolick that amount. *Id.* at 53. Pascavage confirmed the Bureau refused payment. *Id.* On cross-examination, Pascavage stated he did not discuss this arrangement with Krolick until the Saturday before the sale. *Id.* at 54.

In its February 15, 2024 Order, the trial court dismissed Krolick's objections. The trial court apparently credited all of the testimony offered at the hearing. The trial court acknowledged that Section 603 of RETSL gives a taxpayer the opportunity to cure delinquent taxes "prior to the actual sale." 72 P.S. § 5860.603. The trial court concluded that Krolick did not cure the delinquency before the sale. It reasoned:

> There was no testimony provided at the hearing by the Bureau or [Krolick] to show that [Krolick] ever made an attempt to cure the delinquent taxes prior to his arrival at the courthouse at approximately 8:15 a.m. the morning of the sale and in fact he still did not have the money but was reliant upon his friend, [Pascavage], to act as his surrogate. Testimony at the hearing was that [Krolick] arrived at approximately 8:15 a.m. on the morning of the sale with [Pascavage] who was prepared to loan [Krolick] the money to pay the delinquent taxes. There is no evidence

3

that [Krolick] made any attempts to go to the Upset Sale. Instead, he left the courthouse with his surrogate, [Pascavage], and made no further attempts. He had made no prior attempts either in an effort to cure his delinquent taxes . . . . He had never attempted to reach out to the Bureau any time prior or work out any type of installment agreement.

Trial Court Op. at 5-6. The trial court distinguished our decision in *Jenkins v. Fayette County Tax Claim Bureau*, 176 A.3d 1038, 1044 (Pa. Cmwlth. 2018), where we stated that a tax claim bureau acted contrary to RETSL by refusing an owner's offer of cash payment. The trial court noted that the owner in *Jenkins* had offered payment on the Friday before a Monday sale, whereas Krolick did not offer payment until the morning of the sale. Krolick appealed to this Court.

On appeal,[3] Krolick raises essentially two issues. First,[4] he argues that the trial court erred by failing to apply the correct definition of "actual sale" in RETSL, which would have required the Bureau to accept the payment when Krolick offered it, or alternatively, to offer Krolick a payment plan, either of which would be a basis to set aside the sale. Second, Krolick argues some of the trial court's apparent factual findings in its Opinion are contradictory or lack support in the record, such as statements that Krolick lacked the money to pay the taxes and had not secured a way to pay.

Section 603 of RETSL provides, in relevant part:

Any owner . . . may, at the option of the bureau, *prior to the actual sale*, (1) cause the property to be removed from the sale by payment in full of taxes which have become absolute and of all charges and interest due on these taxes

---

[3] Our review in tax sale appeals "is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 181 n.6 (Pa. Cmwlth. 1999).

[4] For ease of disposition, we have reordered and combined Krolick's arguments on appeal.

4

to the time of payment, or (2) enter into an agreement, in writing, with the bureau to stay the sale of the property upon the payment of twenty-five per centum (25%) of the amount due on all tax claims and tax judgments . . . .

72 P.S. § 5860.603 (emphasis added). Section 102 of RETSL defines "actual sale" as "payment of the full amount of money agreed to be paid as the sale price by the successful bidder or purchaser at upset sale under sections 605 through 609 [of RETSL]." *Id.* § 5860.102.

Krolick argues it is undisputed that the "actual sale," as defined in the statute, could not have happened by the time he offered payment at 8:15 a.m., since the bidding at the sale did not begin until 8:30 a.m. Further, the relevant action is not the scheduled time of the sale or the taking of a bid, it is the purchaser's payment. The Bureau was required to remove the Property from sale because he offered full payment prior to the actual sale. On that basis Krolick argues the sale should be set aside. Alternatively, he argues the Bureau should have offered an installment plan, because "where an owner has paid at least 25% of the taxes due, the tax authority is required to inform the owner of the option to enter into an installment agreement." *Jenkins*, 176 A.3d at 1044.

In response, the Bureau argues Krolick had the opportunity to make payment before the day of the sale but did not do so despite having notice and the opportunity to cure. The Bureau argues that Krolick's failure to adhere to the Bureau's policy means he failed to make payment before the sale, so the Bureau's refusal of payment is consistent with Section 603. In reply, Krolick argues Section 603 is clear and the Bureau cannot simply change the statutory deadline for payment.

We agree with Krolick that under the specific facts of this case, the sale must be set aside. Here, the "actual sale" must have occurred after 8:15 a.m. on September 18, 2023, which means that Krolick's offer of full payment at 8:15

5

occurred "prior to the actual sale." It is essentially undisputed—and was found as fact by the trial court—that Krolick was present at the Bureau's office with the Bureau's employees at 8:15 a.m., offering to pay the taxes. The Bureau's employees could have accepted payment, but refused because of the Bureau's direction not to do so after the business day before the sale. That direction is inconsistent with RETSL. Once Krolick offered payment prior to the sale, Section 603 required the Bureau to either remove the Property from sale, for full payment, or offer an installment plan and stay the sale, for partial payment.[5]

We conclude that, under these factual circumstances, the tax sale must be set aside as unlawful, and the trial court clearly erred in dismissing Krolick's objections. Accordingly, we are constrained to reverse the trial court's order.[6]

_____
MATTHEW S. WOLF, Judge

---

[5] Section 603 is clear, and we need not construe the phrase "at the option of the bureau," which the parties did not address. Here, the Bureau did not remove the Property from sale or offer an installment plan. We have held that, when presented with payment of "at least 25% of the taxes due," the Bureau "is *required* to inform the owner of the option to enter into an installment agreement and that a failure to do so is a violation of the owner's due process rights." *Moore v. Keller*, 98 A.3d 1, 5 (Pa. Cmwlth. 2014) (emphasis added).

[6] Given this conclusion, we need not address Krolick's argument that some of the trial court's statements of the facts were technically inconsistent or lacking support in the record.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Stephen Krolick,           :
          Appellant    :
      v.              :   No. 272 C.D. 2024
                             :
Schuylkill County Tax Claim Bureau   :

## O R D E R

AND NOW, this 16th day of April 2026, the February 15, 2024 order of the Court of Common Pleas of Schuylkill County is REVERSED.

_____
MATTHEW S. WOLF, Judge